808 So.2d 818 (2002)
JIM WALTER HOMES, INC. and Lumbermen's Underwriting Alliance
v.
Benny Ray PRINE.
No. 2001 CA 0116.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*820 Christopher H. Hebert, Lafayette, for Plaintiffs-Appellees Jim Walter Homes, Inc. and Lumbermen's Underwriting Alliance.
Joe Arthur Sims, Hammond, for Defendant-Appellant Benny Ray Prine.
Before: FOIL and PETTIGREW, JJ., and KLINE,[1] J. Pro Tem.
PETTIGREW, J.
Claimant appeals from a judgment of the Office of Workers' Compensation disqualifying him from receiving workers' compensation benefits based on violation of La. R.S. 23:1208, which governs misrepresentation concerning benefits. For the following reasons, we affirm.

FACTS
On May 5, 1995, during the course and scope of his employment with Jim Walter Homes, Inc., Benny Ray Prine fractured his right arm while working as a carpenter. Following this incident, Mr. Prine immediately began receiving weekly compensation benefits from Lumbermen's Underwriting Alliance, the workers' compensation carrier for Jim Walter Homes, Inc. (collectively referred to as "Lumbermen's"). Lumbermen's also began paying Mr. Prine's medical expenses associated with this work-related injury. According to the record, Mr. Prine had previously fractured his right arm while arm wrestling in prison, a fracture that may have only been partially healed at the time of this incident in May of 1995. On May 16, 1995, Dr. L. Fambrough performed surgery on Mr. Prine's right arm, consisting of an "internal fixation with intramedullary humerus rod."
Subsequently, Mr. Prine was referred to Dr. Kyle F. Dickson for treatment of "gross instability" that had developed in Mr. Prine's right arm. Dr. Dickson scheduled Mr. Prine for surgery on three separate occasions, all of which were cancelled because of Mr. Prine's failure to appear for surgery. As a result of Mr. Prine's failure to undergo the needed surgery, Lumbermen's filed a disputed claim against Mr. Prine for his unreasonable failure to follow recommended medical treatment. Mr. Prine eventually agreed to have the recommended surgery, which was performed by Dr. Dickson on January 28, 1999.
In connection with Lumbermen's initial disputed claim, Mr. Prine was deposed on January 21, 1999. Mr. Prine was asked whether he had ever been injured in an automobile accident. Mr. Prine indicated he had been involved in an automobile accident more than ten years ago and had "sprung" his back. Mr. Prine also recalled a "truck wreck" in either 1995 or 1996, where the only injury he sustained was a "powder burn" from the air bag. Mr. *821 Prine added that he believed this accident occurred after his work-related accident in May of 1995. Mr. Prine was then questioned specifically about the time period following his May 1995 workers' compensation accident and whether he had any accidents or injuries since that time. The following colloquy occurred:
Q. Now let's talk about the time period after your accident of May, 1995. Have you had any accidents since that time?
A. Now what are you talking about, like falling down or something like that?
Q. Anything, any kind of accident.
A. No, sir, not that I can recall.
Q. Have you injured yourself?
A. No, sir.
Q. When I say injuries, I'm talking about any type of injury. Did you hurt yourself in any way since this accident in May of 1995?
A. Not that I can recall.
Following Mr. Prine's initial deposition and surgery in January of 1999, Lumbermen's learned that Mr. Prine had engaged in certain misrepresentations regarding his workers' compensation claim and the benefits he was receiving. Accordingly, Lumbermen's filed the instant claim against Mr. Prine, seeking restitution of all amounts paid out in medicals and indemnity and a declaration that Mr. Prine had forfeited his right to workers' compensation benefits pursuant to La. R.S. 23:1208 "due to him misrepresenting his past medical history and subsequent accident and injuries and otherwise impairing [Lumberman's] subrogation rights." Shortly thereafter, Lumberman's filed a supplemental and amended claim against Mr. Prine, adding that Mr. Prine had misrepresented information concerning mileage reimbursements for travel to and from his doctor's office in January and February of 2000. In connection with these proceedings, Mr. Prine was again deposed on August 1, 2000.
During the August 1, 2000 deposition, Mr. Prine was confronted with information concerning three separate incidents, all of which occurred after his May 5, 1995 accident, that he had failed to disclose during his initial deposition. Mr. Prine was questioned in detail about an automobile accident he had been involved in on January 2, 1999, just nineteen days prior to his initial deposition of January 21, 1999. When asked why he failed to disclose this accident during his first deposition, Mr. Prine responded, "I thought I did." While acknowledging that he was involved in the accident and that he had filed a lawsuit concerning same, Mr. Prine denied telling hospital personnel at North Oaks Medical Center that he was in pain. In fact, Mr. Prine testified that the only injuries he sustained in the January 2, 1999 accident was glass in his face and his back that was later removed by hospital personnel. Mr. Prine denied seeking any further medical treatment in connection with this incident after he was seen at North Oaks Medical Center on January 3, 1999.
When asked at trial why he failed to disclose this accident during his August 1, 2000 deposition, Mr. Prine responded, "It didn't pop in my mind. I was taking that medication." Further, when questioned regarding this incident at trial, Mr. Prine admitted that he had "messed up" in his prior testimony when he indicated that he had not told medical personnel at North Oaks Medical Center that he was in pain following the accident. Mr. Prine was confronted with the medical records from his January 3, 1999 visit to North Oaks Medical Center and acknowledged he had complaints of neck pain, back pain, and rib pain following the automobile accident on January 2, 1999. However, although the records also reflected that he had sustained *822 an abrasion to his right hand, Mr. Prine denied same, stating that he only had "a couple pieces of glass sticking in the top of [his] hand."
Other information relative to this automobile accident and the extent of Mr. Prine's medical treatment following same was misrepresented and concealed from Lumbermen's until the time of trial. Although at his deposition Mr. Prine had denied seeking any additional medical treatment for injuries sustained in this accident, at trial he acknowledged seeing Dr. D.M. Jarrott, a neurosurgeon, a "few times." Nonetheless, Dr. Jarrott's records reflect that at the time of the August 1, 2000 deposition, Mr. Prine had been seen by Dr. Jarrott on no less than eight occasions. In fact, he had been seen by Dr. Jarrott on July 14, 2000, just two weeks before the deposition. When asked if he had lied in his deposition regarding these visits with Dr. Jarrott, Mr. Prine indicated that he was going to change his testimony but it was too late. He also added that Dr. Jarrott had given him some medication that made him "flip" and affected his ability to recall this follow-up treatment with Dr. Jarrott. However, Mr. Prine acknowledged that he had not said anything during his depositions about medication affecting his ability to testify correctly.
According to the records, Mr. Prine was initially examined by Dr. Jarrott on January 27, 1999, just one day before his surgery on January 28, 1999. At that time, Mr. Prine complained of neck pain, pain between his shoulder blades, low back pain, and right hand pain. Further, under the "Neurological" section of Dr. Jarrott's report, Dr. Jarrott clearly noted that Mr. Prine was unable to close his right hand and that his right fifth finger was fixed in partial flexion. Moreover, in the "Diagnosis" section of the report, Dr. Jarrott indicated that Mr. Prine may have fractured his right hand. Despite this objective medical evidence to the contrary, Mr. Prine continuously denied at trial providing such a history to Dr. Jarrott. In fact, Mr. Prine testified that he had no idea where this information came from because he had not injured his right hand in the January 3, 1999 automobile accident. Mr. Prine maintained that the problems with his right hand did not start until after the surgery on January 28, 1999.
Not only are Dr. Jarrott's records contrary to Mr. Prine's claims concerning the extent of his injuries, but the records from Dr. Kyle Dickson, the physician who performed Mr. Prine's hand surgery on January 28, 1999, also contradict same. In a progress note from January 20, 1999, eight days before his surgery, Dr. Dickson noted complaints of right arm pain and further quoted Mr. Prine as stating, "fingers swelling & little finger turning blue." Thus, Mr. Prine's claim that he only began experiencing problems with his right hand after the surgery on January 28, 1999, was completely contradicted by the medical evidence introduced at trial.
A second incident Mr. Prine failed to disclose during his initial deposition was a fight that he was involved in on January 1, 1998, at Players Lounge in Hammond, Louisiana. Mr. Prine was questioned about a visit to North Oaks Medical Center following this incident. According to Mr. Prine, he was hit once in the face during this altercation. Mr. Prine denied being struck in the arm. He also specifically denied telling hospital personnel that he had been hit in the right upper and lower arm during the fight and that he was unable to move his right small finger.
When asked at trial about this incident, Mr. Prine testified that he did not disclose the incident "[b]ecause [he] wasn't in nothing." Mr. Prine was confronted with the medical records from North Oaks Medical *823 Center that reflected he was hit in the right upper and lower arm during the fight and could not move his right small finger. Mr. Prine admitted telling hospital personnel that he could not move his right small finger but denied that it had anything to do with the fight. Nonetheless, according to the medical records, Mr. Prine's right arm was x-rayed and a splint was applied to his right small finger.
The third and final incident Mr. Prine concealed during his initial deposition occurred in March of 1998, when he attempted to use his right arm to jack-up a car. Mr. Prine acknowledged that he was seen at North Oaks Medical Center on March 3, 1998, following this incident but denied being in any pain. He explained that he wanted his arm x-rayed to be sure that nothing had come loose in his arm. In fact, Mr. Prine testified that he did not recall being prescribed any pain medication on March 3, 1998. When asked why he failed to disclose this incident during his initial deposition, Mr. Prine indicated it was because he had not injured his arm in this incident. However, the records from North Oaks Medical Center reveal that Mr. Prine was complaining of pain in his right upper arm and requested a refill of his Lortab prescription. The treating doctor's diagnosis at that time was "chronic pain rt arm." The medical records further indicate that Mr. Prine refused Ultram and other pain medication, stating that Lortab was the only pain medication that worked.

ACTION OF THE WORKERS' COMPENSATION JUDGE
The matter proceeded to trial on the merits on September 18, 2000, at which time Mr. Prine was the only witness to testify live. The parties entered into a joint stipulation regarding the testimony of Desiree Richard, a claims adjuster for Lumbermen's, and submitted various exhibits, including but not limited to medical records and reports, into evidence. The workers' compensation judge took the matter under advisement and allowed the parties to submit post-trial briefs. Thereafter, on September 26, 2000, the judge rendered judgment in favor of Lumbermen's, finding that Mr. Prine willfully made false statements and misrepresentations for the purpose of securing additional workers' compensation benefits. In the September 26, 2000 judgment, the judge noted as follows:
Upon hearing the testimony and particularly observing the demeanor of the defendant upon examination, and upon review of the exhibits, the court concludes the law and evidence to be in favor of the plaintiff, having met their burden of proof by clear and convincing evidence that defendant willfully made false statements and or representations, that said misrepresentations were made willfully and that they were made for the purpose of securing additional future workers' compensation benefits, thus forfeiting defendant's rights to future benefits. No further award of penalties or restitution is necessary under these circumstances.
The judge ordered that Mr. Prine had forfeited his right to any future workers' compensation benefits as of the date of the judgment. It is from this judgment that Mr. Prine has appealed, assigning the following specifications of error:
I. The Administrative Law Judge did not correctly interpret Louisiana R.S. 23:1208 when applying it to the facts in the instant case.
II. The Administrative Law Judge made no findings to show how the misrepresentations harmed Jim Walter Homes, Inc.

*824 III. The Administrative Law Judge made no findings showing that Benny Ray Prine obtained anything of value because of these misrepresentations from Jim Walter Homes, Inc. to which he would not have been otherwise entitled to.

DISCUSSION
Louisiana Revised Statutes 23:1208 provides penalties for willfully making a false statement or representation in connection with a workers' compensation claim. The statute provides, in pertinent part, as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture of benefits under La. R.S. 23:1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708, p. 7 (La.9/5/95), 660 So.2d 7, 12. Further, it is well settled that the factual findings of a workers' compensation judge may not be set aside unless those findings are clearly wrong in light of the record reviewed in its entirety. Martin v. Olsten Industrial Services, 98-0463, p. 3 (La.9/18/98), 718 So.2d 404, 406.
In Resweber, the court noted that in enacting and amending La. R.S. 23:1208, the legislature made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud the workers' compensation system and should be dealt with harshly. The court further recognized the legislature's continued effort over the years to make La. R.S. 23:1208 easier to enforce and to make its penalties stronger. Resweber, 94-2708 at 14-15, 660 So.2d at 16. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits. This legislative intent cannot be ignored. Therefore, once it has been determined that a false statement or representation has been made, the workers' compensation judge must make a factual determination as to whether, based on the record, the statement or representation was willfully made "specifically to obtain benefits, and thus to defraud the workers' compensation system." Sumrall v. Luhr Brothers, 95-0779, p. 5 (La.App. 1 Cir. 12/15/95), 665 So.2d 796, 799, writ denied, 96-0187 (La.3/15/96), 669 So.2d 425.
There is no requirement in La. R.S. 23:1208 that the employer be prejudiced. Id. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement would not result in the forfeiture of benefits. Rosson v. Rust Constructors, Inc., 32,789, p. 5 (La.App. 2 Cir. 3/1/00), 754 So.2d 324, 327-328, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1105.
In Varnado v. Winn-Dixie Louisiana, Inc., 98-0301, pp. 9-10 (La.App. 1 Cir. 9/25/98), 720 So.2d 66, 71, the plaintiff, who had suffered a back injury, forfeited his *825 benefits because he denied having prior low back pain before the accident. The evidence showed that he had been treated by another medical doctor and chiropractor for previous low back injuries. He willfully made false statements regarding his prior back injuries and treatment for the purpose of obtaining workers' compensation benefits, resulting in his forfeiture of any rights to benefits.
In Bass v. Allen Cannery Company, Inc., 30,635, pp. 9-15 (La.App. 2 Cir. 6/26/98), 715 So.2d 142, 147-149, writ denied, 98-2069 (La.11/6/98), 728 So.2d 395, the plaintiff denied a prior history of injury and medical treatment in her deposition. At trial, the plaintiff claimed she did not understand the questions. Her false statements bore directly on the issue of whether she sustained a work-related injury, and her misstatements were made to obtain workers' compensation benefits. The court concluded that the plaintiff forfeited any claim for benefits.
In Sumrall, 95-0779 at 5-6, 665 So.2d at 799, the plaintiff denied any involvement in an automobile accident subsequent to his workers' compensation claim with the full knowledge that the statements were false. He willfully made false representations for the purpose of obtaining workers' compensation benefits, thus forfeiting his right to any benefits.
On appeal in the instant case, Mr. Prine concedes that some of the statements he made during his depositions and at trial "differed" from reports introduced into evidence. He even acknowledges that his statements could have been interpreted by the judge as "willful and/or deliberate." However, despite this concession, Mr. Prine argues that Lumbermen's failed to prove that the statements were made for the purpose of obtaining benefits. He further contends that the workers' compensation judge did not provide any reasons as to how these misrepresentations harmed Lumbermen's. In response, Lumbermen's asserts that there was more than sufficient evidence to support a finding that Mr. Prine violated La. R.S. 23:1208 by making willful misrepresentations concerning mileage reimbursement requests and no less than three subsequent accidents and injuries to his right arm following his May 5, 1995 work-related accident.
Initially, we note that the issue raised by Mr. Prine in his second assignment of error, i.e., whether his misrepresentations harmed Lumbermen's, was assigned as error but not briefed by Mr. Prine. Thus, it is considered abandoned pursuant to Uniform RulesCourts of Appeal, Rule 2-12.4. See Theriot v. Bourg, 96-0466, p. 17 (La.App. 1 Cir. 2/14/97), 691 So.2d 213, 225, writ denied, 97-1151 (La.6/30/97), 696 So.2d 1008. Nonetheless, even if we were to consider this issue on appeal, we recognize that La. R.S. 23:1208 does not require a finding that Lumbermen's be prejudiced or harmed by Mr. Prine's misrepresentations in order to trigger forfeiture of his right to workers' compensation benefits. Sumrall, 95-0779 at 5, 665 So.2d at 799. Accordingly, Mr. Prine's argument in this regard is without merit.
Similarly, with regard to Mr. Prine's argument that there was no showing by Lumbermen's that he received "anything of value" because of his misrepresentations, there is no such requirement in La. R.S. 23:1208. As previously indicated, La. R.S. 23:1208 only requires that 1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or representation be made for the purpose of obtaining workers' compensation benefits. There is more than sufficient evidence in the record to support a finding the Mr. Prine made several willful misrepresentations during his depositions *826 and at trial. Therefore, we are left only with the question of whether the statements were made "specifically to obtain benefits, and thus to defraud the workers' compensation system." Sumrall, supra.
In a workers' compensation case, we are bound by the manifest error rule and may not set aside the factual findings of the workers' compensation judge absent a finding by this court that they are clearly wrong or manifestly erroneous. See Martin, supra. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
Following a thorough review of the record in the instant case, we find no manifest error in the workers' compensation judge's factual findings, findings that were based heavily on credibility determinations made by the judge. We find sufficient evidence to support a finding that Mr. Prine made repeated, willful, false statements for the purpose of obtaining benefits. Mr. Prine consistently failed to disclose incidents wherein he suffered various injuries including injury to his right arm. We find no error in the workers' compensation judge's determination that Mr. Prine willfully misrepresented his medical history and present condition for the purpose of obtaining benefits. Because of the discrepancies in Mr. Prine's testimony, we cannot say the workers' compensation judge's dismissal of his claim based on a forfeiture of benefits pursuant to La. R.S. 23:1208 is erroneous.

CONCLUSION
For the above and foregoing reasons, the judgment of the workers' compensation judge is affirmed in all respects. All costs associated with this appeal are assessed against defendant-appellant, Benny Ray Prine.
AFFIRMED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.