868 So.2d 141 (2003)
Troy L. DAVIS, Jr.
v.
AMS TUBE CORPORATION.
No. 2002 CA 2427.
Court of Appeal of Louisiana, First Circuit.
December 31, 2003.
*143 Thomas J. Hogan, Jr., Hammond, for Plaintiff-Appellant # 1, Troy L. Davis, Jr.
Stephen W. Brooks, Jr., Richard J. Voelker, Shannon K. Lowry, Covington, for Defendant-Appellant # 2, AMS Tube Corporation.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
CARTER, C.J.
In this appeal, Troy L. Davis, Jr. and his previous employer, AMS Tube Corporation (AMS Tube), both challenge a decision of the Workers' Compensation Judge (WCJ). For the following reasons, we affirm.

BACKGROUND
Mr. Davis was a plant manager for AMS Tube in Hammond, Louisiana. He was a salaried employee with no set lunch schedule. He alleges that he injured his neck, left shoulder, and left arm in the course and scope of his employment on June 2, 1998, when he fell off a stack of pipe that he had been inspecting.[1] This incident was not witnessed; however, Mr. Davis sought medical treatment for pain in July, and underwent cervical fusion surgery on August 3, 1998. The surgery provided Mr. *144 Davis immediate relief from the pain he had been experiencing since the time of his fall at work. He returned to full-time work status on August 20, 1998, while still under the care of his treating neurosurgeon, Dr. Edward Thomas Cullom, III.
On August 26, 1998, Dr. Cullom noted that one or both of the bottom screws were backing out of the plate that had been inserted in Mr. Davis's neck during the surgery. Dr. Cullom also noted that the graft site appeared to be collapsing, which was an indication that a second surgery might be required. On September 9, 1998, Dr. Cullom noted that x-rays revealed a definite compression of the inferior graft site, and that both screws had backed out of the plate in Mr. Davis's neck. Although it appeared that the fusion was failing, Dr. Cullom and Mr. Davis elected to continue conservative treatment at that time by continuing the use of a rigid cervical collar and giving Mr. Davis more time to heal. Dr. Cullom scheduled Mr. Davis for follow-up treatment in early October.
The next day, on September 10, 1998, Mr. Davis left AMS Tube around 11:00 a.m. He alleges that he went to Wal-Mart to purchase film so that he could photograph a batch of inferior pipe at the AMS Tube plant. After making his film purchase, Mr. Davis decided to stop at his residence to pick up a sandwich he had made that morning. He quickly ate his lunch and while returning to the AMS Tube plant facility, he was violently rear-ended in a motor vehicle accident. Mr. Davis was transported by ambulance to an emergency room, but was released. On November 5, 1998, Mr. Davis underwent a second cervical fusion surgery because Dr. Cullom had determined that the first fusion had failed. Mr. Davis returned to full-time work status on January 3, 1999; however, he continued to suffer from significant neck and arm pain as well as a vocal chord trauma associated with the neck surgery. Mr. Davis received his full salary throughout this time. He was terminated from his employment with AMS Tube on March 24, 1999. The parties stipulated at trial that benefits in the amount of $1,505 per month were paid to Mr. Davis through February 2000.
After he was terminated from his job, Mr. Davis filed a disputed claim for workers' compensation benefits in connection with his injuries from the fall off the stack of pipe at work. He amended his claim form several times, finally alleging in his fifth amended claim form that he was also entitled to benefits in connection with the motor vehicle accident of September 10, 1998. AMS Tube denied that the first unwitnessed accident occurred, and denied that the motor vehicle accident occurred while in the course and scope of Mr. Davis's employment. AMS Tube further alleged that Mr. Davis had forfeited his right to workers' compensation benefits under LSA-R.S. 23:1208, because he had willfully misrepresented his prior accidents and injuries to his neck in order to receive benefits.
A trial on the merits was held on April 29, 2002.[2] The WCJ rendered judgment on June 13, 2002, in favor of AMS Tube, finding that although Mr. Davis had sustained an injury by accident in the course and scope of his employment with AMS Tube on July 2, 1998, he was not in the course and scope of his employment with AMS Tube on September 10, 1998, when he was involved in the motor vehicle accident. *145 The WCJ further found that there was a causal connection between Mr. Davis's work-related injuries sustained on July 2, 1998, and the injuries he sustained in the September 10, 1998, non-work-related accident. However, the WCJ ruled that Mr. Davis forfeited his right to benefits under LSA-R.S. 23:1208, assessed Mr. Davis with a civil penalty in the amount of $1,000, and dismissed Mr. Davis's claim with prejudice.
Both Mr. Davis and AMS Tube have appealed. Mr. Davis argues that the WCJ erroneously admitted medical records offered by AMS Tube for impeachment purposes and committed manifest error in the factual finding of fraud and in applying LSA-R.S. 23:1208, causing Mr. Davis to forfeit workers' compensation benefits. AMS Tube argues that the WCJ manifestly erred in finding that a work-related accident occurred on July 2, 1998, and in concluding that all of Mr. Davis's neck and shoulder injuries were causally connected to that work-related accident. AMS Tube also contends the WCJ abused her discretion in assessing only a civil penalty against Mr. Davis and failing to award restitution of the benefits it wrongly paid to Mr. Davis.

DISCUSSION
We first address the forfeiture of benefits issue because if we find that the WCJ correctly ruled that Mr. Davis committed fraud by misrepresenting his prior accidents and injuries, then the issues of whether the WCJ manifestly erred in finding that a work-related accident occurred and whether Mr. Davis's injuries were causally related to the work-related accident are moot. See Morton v. Wal-Mart Stores, Inc., 36,398 (La.App. 2 Cir. 10/25/02), 830 So.2d 533, 538, writ denied, 02-2814 (La.2/7/03), 836 So.2d 101.
Forfeiture of benefits for misrepresentation is governed by LSA-R.S. 23:1208, which provides in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

* * *
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judgment, forfeit any right to compensation benefits under this Chapter. (Emphasis added.)
This statute applies to any false statement or misrepresentation made specifically for the purpose of obtaining workers' compensation benefits. Hurst v. Railserve, Inc., 02-0929 (La.App. 1 Cir. 3/28/03), 844 So.2d 342, 345. The statute is broadly worded and encompasses any false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Hull v. Fluker Farms, 00-0757 (La.App. 1 Cir. 5/11/01), 787 So.2d 535, 539, writ denied, 01-2291 (La.11/16/01), 802 So.2d 612.
*146 The requirements for forfeiture of benefits under LSA-R.S. 23:1208 are that there is: (1) a false statement or representation; (2) willfully made; and (3) for the purpose of obtaining or defeating any benefit or payment. Jim Walter Homes, Inc. v. Prine, 01-0116 (La.App. 1 Cir. 2/15/02), 808 So.2d 818, 824. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Id.
The issue of whether an employee forfeited his workers' compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Hull, 787 So.2d at 539. Before an appellate court may reverse the factual determinations of the WCJ, it must find from the record that a reasonable factual basis does not exist for the findings or that the findings are clearly wrong or manifestly erroneous. Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Hull, 787 So.2d at 539-40, citing Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). In addition, when factual findings are based on witness credibility, the appellate court must give great deference to the fact-finder's decision to credit or discredit a witness's testimony. Teano v. Electrical Const. Co., 02-2032 (La.App. 1 Cir. 5/9/03), 849 So.2d 714, 717.
With regard to Mr. Davis's misrepresentations about prior medical treatment, the WCJ provided extensive written reasons for judgment making the following determinations:
[T]his court also takes into consideration the nature, extent, and duration of the prior treatment, and whether it involves the same or similar injury and part of body.
In the instant case, Mr. Davis was asked the following in his January 24, 2000 deposition:
"Q. At the time you were hired with AMS, did you have any problems with your back or neck?
A. No.
.......
Q. Had you ever had any problems with your back or neck?
A. Yes. [I] had back surgery in 1991.
......
Q. And prior to working at AMS, you had no neck problems or injuries?
A. No. (Shakes head negatively)."
Additionally, medical records of Dr. Cullom dated July 28, 1998 include the following notation:
"BACK AND NECK INJURY: The patient denies a prior history of neck injuries or trouble... He has had back problems off and on in the past..."
Impeachment evidence introduced at trial indicates that Mr. Davis has had significant prior neck problems and had received treatment for neck pain as recently as two months before his July 2, 1998 work injury. Medical records of Dr. Alan Gruman at the Kirklin Internal Medicine Clinic dated June 22, 1994 indicate that Mr. Davis presented with a history of falling off a trailer on his right shoulder then onto his back. He had discomfort in the right neck as well as the right shoulder. On April 4, 1995, Mr. Davis was seen by Dr. Gruman complaining of recurrent headaches and neck and shoulder pain. Dr. Gruman wrote: "I saw him initially in 6/94 for his neck discomfort, but since then, he has reported to me that it has become progressive." Again on June 27, 1995, Dr. *147 Gruman reported "recurrent neck pain with MRI scan showing mild cervical spondylosis." Dr. Gruman referred Mr. Davis to Dr. Richard Morawetz, a neurosurgeon at the Kirklin Clinic. Dr. Morawetz noted the following in his May 11, 1995 report:
"This is a 55 year old right handed white male who fell at home approximately one year ago and since then he has been suffering from intractable neck pain. His pain has increased in frequency and severity over the last six to eight months. He went to physical therapy and didn't improve so he went to his local doctor who referred him for a neurosurgical evaluation."
In a March 13, 1997 report, Dr. Gruman noted the following:
"GENERAL: This is a follow-up visit for Mr. Davis who is a pleasant 56-year-old white male who comes in today for physical. It has been a while since I have seen him, around 3/95. Medical problems include the following:
Chronic neck pain with cervical spondylosis conservatively treated at the encouragement of Dr. Morawetz. He does some neck exercises and has some occasional pain but does fairly well with that.
.........
INTERIM FAMILY HISTORY AND SOCIAL HISTORY: He is getting ready to move to Hammond, Louisiana....."
Certified medical records from the Medical Clinic of Tangipahoa indicate Mr. Davis was seen by Dr. Mark Tilyou on April 21, 1998, less than 3 months before his July 2, 1998 work-related injury. His chief complaint was right neck and shoulder pain for 3 weeks. He presented again on May 18, 1998 with complaints of right neck and shoulder pain.
Based on the foregoing, the court finds that all three elements of the Resweber test have been met.[3]Mr. Davis was specifically asked in his deposition whether he had prior neck problems or injuries, which he denied. This is clearly a false statement. He was also asked about prior neck problems before being hired at AMS, which he also denied. This is clearly contradicted by the fact that he had a complete physical in March of 1997, wherein he told Dr. Gruman about his impending move to Hammond. Mr. Davis testified he moved his trailer to the Hammond area in March of 1997 after AMS hired him. Clearly, his visit to Dr. Gruman was in anticipation of his new job and Dr. Gruman's report clearly indicated at that time Mr. Davis had been treating with him for "chronic neck pain."
As to whether Mr. Davis' false statements were willfully made to obtain benefits, the court notes that the prior treatment with Dr. Gruman was for neck problems, the same part of body injured in July 2, 1998 and for which he was paid benefits. The prior treatment of his neck problems was extensive, involving diagnostic studies, physical therapy, and medication.
...

The court also finds it inconceivable that Mr. Davis simply forgot about seeing Dr. Tilyou only 2 to 3 months before his July 2, 1998 accident. Similarly, it is also illogical that Mr. Davis would remember to disclose his prior back problems in his deposition and to his *148 physicians, but fail to remember his prior neck problems, which occurred closer in time to his July 2, 1998 injury.

The court had the opportunity to observe Mr. Davis over several hours of testimony and finds him to be a less than credible witness. Mr. Davis continuously justified his failure to disclose prior injuries by saying that "nothing was broke", therefore he did not feel the need to disclose such injuries. The problem with this explanation is that in his deposition and in the history given to Dr. Cullom, the questions were asked in a general sense, i.e., he was asked about prior neck "problems" or "injuries", not whether he broke his neck. Thus, his failure to disclose his prior neck problems when asked can only be construed as a willful attempt to obtain benefits for a longstanding pre-existing problem. (Emphasis added.)
We have thoroughly reviewed the record and find that the WCJ's account of the numerous instances where Mr. Davis misrepresented his prior neck problems to his physicians and in his deposition is accurate. The evidence outlined above clearly supports the WCJ's finding that Mr. Davis engaged in fraudulent behavior for the purpose of obtaining workers' compensation benefits. Mr. Davis's misrepresentations clearly fall within the scope of LSA-R.S. 23:1208.
Mr. Davis argues on appeal that the WCJ erroneously admitted his prior medical records for impeachment purposes, because the evidence was not contained in the pretrial scheduling order. We find no merit to Mr. Davis's argument. The WCJ has great discretion in conducting trials in a manner that he or she determines to be consistent with the fair administration of justice. Reasonable questions as to the admissibility of evidence should be resolved in favor of receiving such evidence. Teano, 849 So.2d at 719. The evidence was admitted over Mr. Davis's objection during his cross-examination, and it was used for impeachment purposes to show his prior history of neck problems that he had denied. Generally, impeachment evidence does not have to be disclosed prior to trial. See Johnson v. State, Through Division of Administration, 510 So.2d 87, 90 (La.App. 1 Cir.1987). Under the circumstances, we find no abuse of discretion on the part of the WCJ in admitting the prior medical records into evidence.[4] Furthermore, we fail to see how Mr. Davis can be prejudiced by surprise with regard to his personal medical history contained within his medical records. We also note that some of the misrepresentations made by Mr. Davis were not contained in the impeachment evidence, but were made in his deposition testimony given in connection with his claim for benefits.
The WCJ's finding regarding fraud was based on credibility determinations. This finding should not be disturbed on review. Teano, 1849 So.2d at 722. Mr. Davis's misrepresentations concerning his prior neck problems relate directly to his claim for benefits since he alleges that his cervical fusion surgeries stem from the work-related accidents. The record is replete with instances in which Mr. Davis denied prior neck injury and treatment, including his deposition testimony, his testimony in court, and his related history when examined by doctors.
*149 Based on the foregoing, we cannot say the WCJ erred in finding that Mr. Davis violated LSA-R.S. 23:1208, and therefore, forfeited his right to benefits.
Accordingly, we affirm the finding of fraud and pretermit discussion of the issues raised by both parties surrounding the accidents and causation. As for AMS Tube's argument that the WCJ abused her discretion in failing to award restitution of benefits pursuant to LSA-R.S. 23:1208(D), we note that the statute does not mandate that the WCJ order restitution.[5] The awarding of restitution lies within the discretion of the WCJ. Teano, 849 So.2d at 724. The WCJ exercised her discretion in assessing a civil penalty against Mr. Davis in lieu of awarding restitution, after specifically considering AMS Tube's request. Because AMS Tube does not show how the WCJ abused her discretion in failing to award restitution, we find no merit in this assignment of error.

DECREE
The judgment of the WCJ is affirmed. Costs of this appeal are assessed equally to the parties.
AFFIRMED.
NOTES
[1] There is a discrepancy between AMS Tube's report-of-injury form stating that the accident occurred on July 2, 1998, and Mr. Davis's allegation and testimony that the accident occurred on June 2, 1998. The WCJ found that the accident actually occurred on July 2, 1998, because that date fell on a Thursday, and it was documented in the certified medical records of Dr. Mark Tilyou, Mr. Davis's initial treating physician. Considering the record as a whole, we find no merit to AMS Tube's assertion that the WCJ manifestly erred when she concluded that the accident occurred on July 2, 1998. We also note that the actual date of the accident is not critical to the determination of whether a work-related accident occurred in this case.
[2] This matter was previously heard on appeal of a summary judgment regarding the course and scope of employment issue as it related to the motor vehicle accident. See Davis v. AMS Tube Corp., 00-1311 (La.App. 1 Cir. 6/22/01), 801 So.2d 466, writ denied, 01-2122 (La.11/2/01), 800 So.2d 877.
[3] The WCJ cites Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7, 12, for the elements required to find forfeiture of benefits under LSA-R.S. 23:1208.
[4] We likewise find no abuse of discretion in the WCJ's evidentiary rulings made prior to trial. Thus, Mr. Davis' assignments of error dealing with the WCJ's rulings on the motion to compel and the motion for an in camera inspection of the impeachment evidence are without merit.
[5] LSA-R.S. 23:1208(D) provides, in pertinent part: "[A]ny person violating the provisions of this Section may be assessed civil penalties..., and may be ordered to make restitution." (Emphasis added.) The word "shall" is mandatary and the word "may" is permissive. Teano, 849 So.2d at 724.