676 So.2d 653 (1996)
Brent SUMNER, Plaintiff-Appellant,
v.
LAKE CHARLES MARINE, et al., Defendants-Appellees.
No. 96-280.
Court of Appeal of Louisiana, Third Circuit.
June 5, 1996.
*654 Robert W. Thomas, Lake Charles, for Brent Sumner.
Steven Claude Judice, Baton Rouge, for Lake Charles Marine.
Before KNOLL, THIBODEAUX and DECUIR, JJ.
DECUIR, Judge.
This is an appeal from a judgment of the Office of Worker's Compensation disqualifying claimant, Brent Sumner, from receiving compensation benefits based on a violation of the provisions of of La.R.S. 23:1208. We reverse.

FACTS
On September 14, 1993, Brent Sumner injured his back while in the course and scope of his employment with Lake Charles Marine. Sumner was attempting to remove an outboard motor from a boat using a hoist belonging to his employer. The hoist had defective wheels. When Sumner attempted to pull the hoist and motor away from the boat, he injured his back. He mentioned the accident to a co-worker that day, but did not report it because he had experienced a similar feeling on a previous occasion that resolved itself without treatment.
Sumner reported the injury the following day and sought treatment from Dr. Willie Jagneaux, a chiropractor who had treated him in the past. Dr. Jagneaux advised Sumner not to return to work and began treatment. Shortly thereafter, Sumner went to see Dr. William Foster, a neurosurgeon.
In October 1993, Sumner gave a recorded statement to an adjustor for Association Risk Management Services, the manager of his employer's compensation fund. In that statement, Sumner described the accident exactly as explained above and reported that he had injured his back in a motorcycle accident as a teenager. In addition, Sumner indicated on an accident report form that he had previously injured his back on the job while shoveling dirt in the parking lot.
In January 1994, Dr. Foster diagnosed a ruptured disc at the L4-5 level and recommended surgery and pain management. *655 Surgery was not immediately performed due to Sumner's obesity. Association Risk Management refused to authorize a comprehensive pain management and rehabilitation program, which included exercise and weight loss to prepare for surgery. This denial was based on the assessment of Dr. Jack Hurst, a neurosurgeon, that Sumner could manage his own pain through self directed weight loss. Dr. Hurst also indicated that surgery would not produce a good result without weight loss.
On April 12, 1995, Dr. Foster reported that Sumner's condition was not improving and that he was experiencing severe depression. In fact, Dr. Foster noted that his depression was severe enough that Sumner had overdosed on his medication. Dr. Foster indicated that the problem was the compensation carrier's refusal of all treatment and stated it was absolutely essential that the carrier realize the gravity of his condition. Dr. Foster concluded that he could not recommend surgery at the time due to Sumner's mental condition.
In addition, Sumner was referred to Dr. Dale Archer, a psychiatrist, who diagnosed chronic pain syndrome and severe depression and recommended his condition be controlled with medication. From the fall of 1993 until July of 1995, Association Risk Management steadfastly refused to authorize pain management or surgery for Sumner.
On June 20, 1995, Association Risk Management took Sumner's deposition in regard to this case. Sumner was asked several questions relating to his past condition and his accident. In the deposition, nearly two years after the accident, Sumner indicated that he had not had previous back injuries and that he fell down during the accident. At the hearing on the matter, Sumner restated the original account of the accident and prior injuries and indicated that at the time of the deposition he simply made errors in recollection.
During the hearing, it was established that Sumner has had limited education. Furthermore, evidence was introduced indicating that he was demoted from the position of shop foreman due to his mental inadequacy. He is apparently good with outboard motors, but has failed the GED test at least four times despite completing the preparatory course.
The defendants contended and the hearing officer found that Sumner's inconsistent statements constituted violations of La.R.S. 23:1208 and disqualified him from receiving compensation benefits. Sumner lodged this appeal.

DISCUSSION
On appeal, Sumner contends the hearing officer erred in disqualifying him under the provisions of La.R.S. 23:1208. We agree.
In Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La. 9/5/95); 660 So.2d 7, the supreme court noted that in order to forfeit benefits, La.R.S. 23:1208 requires that 1) there is a false statement, 2) it is willfully made, and 3) it is made for the purpose of obtaining or defeating any benefit or payment.
In reviewing determinations of the hearing officer, the standard of review is the manifest error or clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94); 630 So.2d 706. However, this court has a constitutional duty to review facts. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, 93-3110, 93-3112 (La. 7/5/94); 639 So.2d 216.
In reviewing the facts of this case it is clear that the hearing officer was correct in determining that Sumner had made a false statement. His testimony at trial and his deposition testimony do not agree. However, we find that the hearing officer was manifestly erroneous in concluding that the statements were willfully made. Sumner's earliest account was direct and fully disclosed all prior injuries. The neurosurgeon, seeing Sumner at Association Risk Management's request, commented on the straightforward openness of Sumner. Given Sumner's lack of education, severe pain exacerbated by defendant's refusal to authorize pain management, his resulting depression, and the long delay before deposition, we find the hearing officer erred in concluding the false statements were willfully made.
*656 Likewise, with regard to the hearing officer's determination that the statements were made for the purpose of obtaining compensation benefits, we must respectfully disagree. The record clearly reveals that in the immediate aftermath of his accident Sumner made no attempt to mislead anyone. He returned to a doctor who had treated his previous injury. He reported his previous injury to his treating physician. Furthermore, he reported his previous injuries to the adjustor for Association Risk Management and described his accident exactly as he described it in court. It was not until nearly two years after the accident that Sumner's recollection became foggy, and we note that those two years had been spent in severe pain due to Association Risk Management's refusal to authorize pain management treatment.
Finally, Sumner's statements do nothing to help him obtain benefits as the defendant's argument clearly demonstrates. Sumner had nothing to fear from disclosure of his past injuries because he had been fully recovered for a great deal of time.
Sumner is a relatively uneducated man who had been left to suffer in great pain for two years, only to be questioned by an attorney about matters that happened in the distant past. His recollection was cloudy, he was not attempting to defraud the workers' compensation system, and had nothing to gain from giving false statements. Accordingly, we find that the hearing officer was manifestly erroneous in concluding that Sumner made the false statements in this case for the purpose of obtaining compensation benefits.
In sum, we find that the hearing officer applied the supreme court's ruling in Resweber in an overly technical fashion. Neither Resweber nor La.R.S. 23:1208 was intended to bar legitimate claimants who inadvertently give contradictory statements, after years of pain, depression, and the associated medication, from receiving the compensation benefits to which they are entitled. The statute and Resweber are intended to weed out those who prey on the compensation system through the use of lies and deceit. Brent Sumner is clearly not one of these individuals.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Worker's Compensation hearing officer is reversed. We remand the case to the Office of Worker's Compensation for hearing on the remaining substantive issues. All costs of this appeal are assessed to defendants-appellees.
REVERSED AND REMANDED.