JjPETTIGREW, J.
In this workers’ compensation action, it is undisputed that the claimant suffered an injury to his cervical spine as a result of an employment-related accident. The employer contests that claimant’s subsequent complaints of lumbar pain and elevated blood sugar levels stem from the accident on the job. The employer now appeals from a judgment in favor of the claimant. We affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
On September 22, 1997, Carl A. Ledet was injured in the course of his employment as a crane operator with Marsh Buggies, Inc. On that date, Mr. Ledet was reported to have sustained injury to his neck and right shoulder while moving a 55-gallon drum of fuel. It is undisputed that Mr. Ledet injured his cervical spine as a result of the accident on the job, and based upon the record before us, is still being treated for his cervical injury. To date, Mr. Ledet has undergone three cervical fusion surgeries.[2] Said medical treatment was authorized by Mr. Ledet’s employer, Marsh Buggies, Inc., which has paid, and continues to pay, Mr. Ledet $350.00 per week, the maximum rate of compensation.
During the course of his treatment, Mr. Ledet expressed complaints of pain in his lower back. His treating physician recommended a series of steroidal treatments, which were subsequently authorized by his employer for treatment of this condition. As a result of the steroidal treatment, Mr. Ledet experienced elevated blood sugar levels. Marsh Buggies, Inc., in its capacity as Mr. Ledet’s employer, filed a Disputed Claim For Compensation form denying all responsibility for medical treatment of Mr. Ledet’s lower back and diabetic conditions.
A hearing was held in this matter on March 30, 2000. At the hearing, the parties stipulated that Mr. Ledet was an employee of Marsh Buggies, Inc., and that he was injured in the course and scope of his employment on September 22, 1997. The parties further stipulated that as a result of said accident, Mr. Ledet sustained an injury to his |sneck for which he was receiving medical treatment, and that he remained temporarily totally disabled. The parties also stipulated that Mr. Ledet was presently being paid the maximum compensation rate of $350.00 per week.
Following the hearing, the workers’ compensation judge requested that both *910 parties submit post-trial memorandums. A judgment was subsequently issued on May 15, 2000, decreeing that Mr. Ledet’s “lower back and diabetes were aggravated by the work-related accident” and his employer, Marsh Buggies, Inc., was directed to pay for treatment of these conditions. Additionally, the workers’ compensation judge concluded that Marsh Buggies, Inc., “did not act arbitrary, capricious, or without probable cause in [its] handling of this matter due to the particular circumstances concerning the injuries of [Mr.] Ledet.” Under the terms of the judgment, Marsh Buggies, Inc. was ordered to pay court costs. From this judgment, Marsh Buggies, Inc. has appealed.
ISSUES
In connection with its appeal in this matter, Marsh Buggies, Inc. raises the following issues for review by this court:
1) Whether Mr. Ledet met his burden of proving that the job accident resulted in a lower back injury and a worsening of his diabetes condition when the unanimous medical testimony stated that these conditions are not related to the job injury, and his lay testimony is not supported by any of the six doctors who treated him?
2) Whether Mr. Ledet met his burden of proving that he needs additional treatment for his alleged diabetes condition and that this additional treatment is related to his job accident when he failed to present any medical evidence to support this claim?
STANDARD OF REVIEW
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of the workers’ compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are | reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Id.
DISCUSSION
After a thorough review of the record in this matter, we note that following the September 22, 1997 accident, Mr. Le-det was initially seen by Dr. Shaunda P. Jones on September 25, 1997. Mr. Ledet was diagnosed with a “trapezius and right shoulder strain.” He was later seen by Dr. John H. Vockroth, III, who made a diagnosis of “mechanical upper back pain” and “right shoulder pain.”
From that office, Mr. Ledet was referred to an orthopedist, Dr. L. Thomas Cashio, on October 13, 1997. Dr. Cashio’s office notes state that “[patient] twisted while pulling on an object [at] work.” In a letter to Mr. Ledet’s employer the following day, Dr. Cashio noted that x-ray exam *911 inations revealed some “anterior longitudinal ligament calcifications at L5-6 and 6-7.” Additionally, a patient information sheet from Dr. Cashio’s office dated October 14,1997, describes the injury sustained by Mr. Ledet as a “neck, back, & shoulder injury.” These findings are significant because they substantiate Mr. Ledet’s trial testimony that he advised each of his treating physicians of his lower back complaints.
After treating Mr. Ledet conservatively, Dr. Cashio referred Mr. Ledet to a neurologist, Dr. Richard M. Warren, and ultimately, Dr. John C. Steck of the same office. In August 1998, after having undergone an anterior cervical fusion at C5-6 in December 1997, Mr. Ledet complained of cervical as well as low back pain to Dr. Steck. Due to Mr. Ledet’s persistent reports of low back pain, a series of lumbar epidural steroids were prescribed by Dr. Steck. Noting that Mr. Ledet denied having back problems prior to his | ^accident at work, Dr. Steck indicated “there [was] a relationship, at least temporally”, between his low back condition and the injury to his cervical spine.
The lumbar epidural steroid injections were ultimately authorized by Mr. Ledet’s employer and were performed on January 6, 1999, along with an anterior cervical fusion at C3-4. The steroid injections gave rise to an elevated blood sugar and a diabetes diagnosis from which Mr. Ledet continues to suffer.
The workers’ compensation judge concluded that Mr. Ledet’s neck, lower back, and diabetes resulted from his work-related injury and that Mr. Ledet’s employer, Marsh Buggies, Inc., is responsible for his treatment. Based on our thorough review of this record, we find no error in the workers’ compensation judge’s determination that Mr. Ledet’s neck and lower back complaints stemmed from his work-related injury and we affirm that portion of the judgment.
As to the diabetes problem, only Dr. John C. Steck, a neurosurgeon, gave an opinion regarding the relationship between Mr. Ledet’s diabetes, the accident, and the subsequent steroid injections. In his deposition, Dr. Steck testified regarding the issue as follows:
A: ... [H]e had an elevated blood sugar after the epidural. I commented that I thought that was related to the steroids.
[[Image here]]
Q: If someone has diabetes ... can an injection of the steroid cause a momentary, a short-term, an acute spiking of their blood sugars [sic]?
A: You can. I’ve never seen it be a clinical problem. We’ve given epidural steroids to diabetics and I’ve never seen it be a clinical problem like it was in Mr. Ledet’s case with this elevation in blood sugar. But it’s reasonable to think that the steroid played some role in that elevation of his blood sugar.
Q: ... [0]ther than simply spiking the blood sugar and keeping it in the system maybe for a couple of days ... is there any long-term effect ... of giving steroids to a diabetic—
A: No.
Q: — if Mr. Ledet’s long-term diabetes worsened?
A: It has nothing to do with the steroid.
(Emphasis supplied.)
Further, Dr. Steck’s progress report of 1/18/99 states:
1 a[Mr. Ledet] also has recently diagnosed diabetes. He said he had a blood sugar of 600 and he was evaluated in the emergency room about three or four days ago. He is being seen today by a primary care physician in Slidell.... I *912 don’t think another epidural of the spine should be tried with a diagnosis of diabetes now.
(Emphasis supplied.)
Dr. Steck’s progress report of 3/5/99 states:
I would like to comment on Mr. Ledet’s problem with elevated blood sugars recently. I really do believe that there is a relationship between this and the epidural steroid that he received. Clearly, steroids can increase blood sugar. I believe that since the epidural was given for treatment of his spinal problem, that management of his elevated blood sugar should be covered by his workmen’s [sic] compensation.
(Emphasis supplied.)
Mr. Ledet testified he had only three incidents of elevated blood sugar and that at the time of the trial, he was taking medication and his sugar levels were normal.
Although Dr. Steck stated the steroid injection caused the “elevated blood sugars,” he did not state that it was a cause of Mr. Ledet’s diabetes. In fact, Dr. Steck indicated that the effect was short-term and that the injection had no effect on the long-term diabetic condition.
It is also interesting to note that the evidence reflects that Mr. Ledet’s diabetes was being treated by another physician, though said physician was not named. This doctor would certainly have been the best source of information regarding the causation of both the diabetes and the three incidents of elevated blood sugar. Moreover, no testimony, expert or otherwise, was presented by the employer to rebut Dr. Steck’s testimony that the incidents of elevated blood sugar were caused by the steroid injections.
The jurisprudence is clear that even if there is a conflict in the testimony, the trial judge’s choice between the two cannot be manifest error. Therefore, we are constrained by the principals of appellate review to affirm payment for these three Incidents of elevated blood sugar.
However, to the extent the workers’ compensation judge awarded medical expenses for Mr. Ledet’s long-term diabetes management and care, he erred. The only l^evidence in the record on this issue does not provide a basis for the conclusion that the steroid injections caused Mr. Ledet’s diabetes. The record is totally devoid of evidence to support an award for Mr. Le-det’s long-term diabetic medical care.
Thus, we affirm the reimbursement of medications and treatment for the three incidents of elevated blood sugars suffered by Mr. Ledet and reverse the award for treatment of Mr. Ledet’s diabetic condition in general.
CONCLUSION
For the above and foregoing reasons, the judgment of the workers’ compensation judge is affirmed in part and reversed in part. Costs associated with this appeal are assessed against plaintiff-appellant, Marsh Buggies, Inc.
AFFIRMED IN PART AND REVERSED IN PART.

. The record before us indicates that Mr. Le-det was still contemplating the third cervical surgery, a posterior cervical fusion at the C3-4 level, as of the trial date. A recitation of facts set forth in Mr. Ledet's brief to this court indicates that he may have undergone said procedure following trial.