849 So.2d 714 (2003)
Ricardo TEANO
v.
ELECTRICAL CONSTRUCTION, CO.
Nos. 2002 CA 2032, 2002 CA 2033.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*716 Pete Lewis, New Orleans, Counsel for Appellant Ricardo Teano.
Max Jones, Jr., John Rabalais, Covington, Counsel for Appellee Electrical Construction, Co.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
KLINE, J.
This is an appeal from a judgment of the Office of Workers' Compensation (OWC) finding that claimant, Ricardo Teano, violated the provisions of La. R.S. 23:1208, thereby forfeiting his rights to workers' compensation benefits. We affirm.

FACTS AND PROCEDURAL HISTORY
On July 5, 2000, Ricardo Teano, while in the course and scope of his employment with Electrical Construction Co. (ECC), slipped in a ditch and injured his right knee. Teano began receiving workers' compensation in the amount of $367.00 per week. Teano was treated by Dr. James Gosey, an orthopedic surgeon. On July 25, 2000, Gosey performed surgery on Teano's knee. ECC paid for the surgery and provided physical therapy. In October of 2000, Gosey indicated that Teano had reached maximum medical improvement. In November of 2000, after conducting a functional capacity evaluation, Gosey recommended that Teano be placed in a status of light to medium level work and opined that Teano was not going to be able to return to his old job as an electrician. In February of 2001, ECC sent Teano to Stanford McNabb for vocational rehabilitation. McNabb obtained several job leads for Teano, but ECC alleges he did not follow up on those leads. Dr. Gosey, Teano's physician of choice, approved Teano for four out of six jobs recommended by McNabb. However, Teano did not pursue those jobs either. On July 6, 2001, ECC filed a disputed claim for compensation alleging that Teano was not cooperating with the vocational rehabilitation.
*717 Teano continued to see Dr. Gosey for follow up visits and Gosey recommended that he see Dr. Denney, a psychiatrist, for depression. Teano filed a disputed claim for compensation on July 30, 2001, and the two cases were consolidated. Teano alleged that ECC had reduced his benefits to SEBS, paid benefits at irregular intervals, and that he was temporarily, totally disabled. Subsequently, Dr. Denney saw Teano on August 16, 2001 and diagnosed Teano with depression. In October of 2001, Dr. Denney opined that Teano was not able to work as a result of his psychiatric condition, which included depression and anxiety, even though, as noted, Dr. Gosey had approved several jobs for Teano.
Subsequently, Teano was examined by several other doctors. On November 14, 2001 he was seen by Dr. Richard Roniger, a psychiatrist chosen by ECC; and on February 1, 2002, Teano was examined by Dr. John Sweeney, an orthopedic surgeon chosen by ECC. Dr. Roniger disagreed with Dr. Denney's opinion that Teano could not return to work. Accordingly, on January 31, 2002, the Office of Workers' Compensation referred Teano to Dr. Harold Ginzburg, a psychiatrist. ECC provided Teano with psychiatric treatment from August 16, 2001 until March of 2002.
ECC eventually learned that Teano had been treated by a Dr. Mathew Horsefield for various problems, including anger, adjustment disorder, anxiety and depression, prior to his work-related accident. On April 3, 2002, Teano's benefits were reduced to supplemental earnings benefits. On May 15, 2002, ECC amended its disputed claim form alleging that Teano violated La. R.S. 23:1208, thus, forfeiting his entitlement to benefits. ECC alleged that Teano stated that he had not been treated for depression, anxiety or other psychological conditions prior to the accident. Teano was questioned by the previously named doctors concerning his medical and family history. However, Teano did not relay any prior problems with anxiety, depression or other psychological conditions prior to the accident to anyone, including the doctors, even when questioned. ECC alleged that medical records from other health care providers showed that Teano suffered from anxiety, depression and other psychological conditions for which he sought treatment before the accident. Records from Global Medical Center indicated such and were presented to Teano on the day of trial.
A trial on the matter was held on April 22, 2002. The OWC judge rendered judgment in favor of ECC. The OWC judge found that Teano violated La. R.S. 23:1208(A) and, thus, forfeited his rights to benefits under La. R.S. 23:1208(E). Teano was also assessed a penalty of $5,000.00 pursuant to La. R.S. 23:1208(D). Teano filed this devolutive appeal.

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error standard of appellate review. Joseph v. J.E. Merit Constructors, Inc., XXXX-XXXX, p. 5 (La.App. 1st Cir.6/21/02), 822 So.2d 72, 76, writ denied, 2002-2295 (La.4/4/03), 840 So.2d 1201; Marsh Buggies, Inc. v. Ledet, XXXX-XXXX, p. 3 (La. App. 1st Cir.12/28/01), 804 So.2d 908, 910. An appellate court cannot set aside the factual findings of a workers' compensation judge unless there is no reasonable basis for those findings or they are clearly wrong. In addition, when factual findings are based on witness credibility, the appellate court must give great deference to the fact-finder's decision to credit or discredit a witness's testimony. Rhodes v. Terrebonne Parish Sheriff, 2001-2279, p. 3 (La. App. 1st Cir.6/21/02), 822 So.2d 114, 116-117. *718 When there is conflict in the testimony, reasonable credibility evaluations and inferences of fact should not be disturbed on review, even if the appellate court feels that its own evaluations and inferences are as reasonable. Rhodes, 2001-2279 at p. 3, 822 So.2d at 117. Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Stobart v. State, Through Dep't of Transp. and Dev., 617 So.2d 880, 883 (La.1993); Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
The hearing officer made the following findings of fact:
The court had the opportunity to observe Mr. Teano's demeanor over the course of several hours of testimony. The court finds him to be less than credible insofar as his testimony was contradicted in numerous respects by evidence introduced at trial. Further, many of his responses on cross-examination were evasive or consisted of "I don't recall."
Mr. Teano was asked on cross-examination if he had been treated by Dr. Mathew Horsefield, his family physician, for anger and depression in May of 1999. He testified he had been treated for anger, but "didn't remember" being treated for depression. In fact, certified medical records and Dr. Horsefield's deposition testimony indicate Mr. Teano had treated with him for anger, depression, anxiety, and adjustment disorder from May 1999 through July 2000.[2] The medical evidence indicated Mr. Teano's problems were related to his daughter's rape in 1998 and other family problems. During his treatment with Dr. Horsefield, Mr. Teano reported problems with libido, restlessness, and problems with sleeping.
Interrogatories and responses thereto were introduced at trial. Mr. Teano was asked specifically whether he had previously sought treatment for the "injuries, conditions, physical or mental, or the disabilities claimed herein", to which he answered "The claimant does not recall ever having been treated for any injuries to the right knee and/or mental health related problems prior to the subject accident." He was also asked to give the name and address of his family physician and all physicians he had seen in the past 15 years; however, no response was given in the answers to interrogatories.
Mr. Teano was also specifically questioned by Dr. Richard Roniger, ECC'S choice of psychiatrist, about "seeing mental health professionals in the past in his life," to which he responded "I can't remember." Dr. Roniger's diagnosis was adjustment disorder, a diagnosis previously made by Dr. Horsefield in the course of his treatment.
Dr. James Denney, Mr. Teano's treating psychiatrist, testified by deposition that while Mr. Teano supposedly did inform him of his daughter's rape in 1998, Dr. Denney did not record that in his records because "Workmen's (sic) Compensation does not authorize or pay for treatment that is not directly related to the job-related injury." This admission is particularly troubling since one of the issues before the court was whether Mr. Teano's current mental condition is related to his knee injury. Regardless of whether or not Mr. Teano disclosed the details of the rape to Dr. Denney, Dr. Denney's deposition testimony as well as that of Mr. Teano both confirm *719 Mr. Teano never disclosed his prior treatment with Dr. Horsefield.
Certified medical records from Global Medical Center indicate that Mr. Teano presented on March 27, 2000 with complaints with "headaches, nausea, back, neck, shoulders". Mr. Teano testified he went to Global for a "crick" in his back and headaches. The Global records indicate Mr. Teano disclosed prior problems with depression and stress. He also disclosed problems with concentration, and the records do contain a reference to Dr. Matthew (sic) Horsefield.
Dr. Harold Ginsburg (sic) evaluated Mr. Teano for an independent psychiatric medical examination. Dr. Ginsburg testified by deposition that Mr. Teano never disclosed his prior treatment with Dr. Horsefield nor the rape of his daughter. Dr. Ginsburg also testified that Mr. Teano did not have problems with memory, since Mr. Teano was able to recall certain medical conditions both before and after his work-related accident.(footnote omitted)(footnote inserted.)
We have reviewed the record and find these findings accurate.

ADMISSION OF GLOBAL MEDICAL CENTER RECORDS
On April 19, 2002, ECC received medical records from the Global Medical Center, which showed that Teano had been treated for depression and anxiety in the past. However, Teano's counsel was not able to receive those records until the morning of trial. The hearing officer allowed the introduction of the records over the objection of Teano. Teano asserts that the OWC judge erred in admitting medical records from the Global Medical Center when those records were not produced by ECC until the day of trial.
Teano relies on Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3rd Cir.3/1/95), 651 So.2d 444, in support of that argument. However, in Lemoine, at issue was the admission of medical evidence pursuant to La. R.S. 23:1122 and in lieu of testimony. In addition, the Hearing Officer Rules were amended in March of 2002, one month before the date of this trial. We do not find in the amended rules one that mandates that all trial exhibits be exchanged within ten days before trial as Teano contends. However, the rules do require that the pre-trial statements include a list and brief description of all exhibits to be offered at trial. Louisiana Administrative Code Title 40, Chapter 60, § 6007. ECC's statement did not include the Global records. However, § 6007 also states that amendments to the pretrial statement are permitted if good cause is shown.
In addition, LAC 40:6203, states that "the trial of a workers' compensation claim shall be governed by R.S. 23:1317." La. R.S. 23:1317 states that "[t]he workers' compensation judge shall not be bound by technical rules of evidence or procedure.... The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be." See also Brooks v. Leggett & Platt, Inc., 94-0617 (La.App. 1st Cir.11/9/95), 665 So.2d 432. The hearing officer has great discretion in conducting trials in a manner that he or she determines to be consistent with the fair administration of justice. Lemoine, 94-836 at 11, 651 So.2d at 451; Brooks, 94-0617 at 4, 665 So.2d at 434. Furthermore, reasonable questions as to the admissibility of evidence should be resolved in favor of receiving such evidence. Lemoine, 94-836 at 11, 651 So.2d at 451. Also, when a party seeks to exclude evidence on grounds of surprise, the court may grant a *720 constructive continuance by delaying the presentation of the evidence until later in the trial to give the complaining party time to prepare rebuttal evidence, and thus avoid prejudice from surprise. Id. Teano did not request such a continuance. Nor could he claim surprise since the records sought to be introduced were his medical records.
Even though requested to do so through discovery, Teano chose not to reveal the existence of the Global Medical Center records. He also did not reveal his prior treatment when questioned by the other doctors. As the hearing officer noted, if Mr. Teano had been "forthcoming about his prior medical treatment, these records would have probably surfaced sooner." Accordingly, the trial court did not abuse its discretion in admitting the Global Medical Center records into evidence.

VIOLATION OF LA. R.S. 23:1208
La. R.S. 23:1208 states, in pertinent part:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
....
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
La. R.S. 23:1208 prohibits a willful misrepresentation made by anyone for the purpose of obtaining or defeating any benefit or payment. La. R.S. 23:1208(A); Hull v. Fluker Farms, XXXX-XXXX, p. 14 (La.App. 1st Cir.5/11/01), 787 So.2d 535, 544, writ denied, 2001-2291 (La.11/16/01), 802 So.2d 612. In Resweber v. Haroil Construction Co., 94-2708, p. 8 (La.9/5/95), 660 So.2d 7, 12, the Louisiana Supreme Court stated that the "legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer."
The requirements for forfeiture of benefits under La. R.S. 23:1208 are that there is: (1) a false statement or representation, (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Jim Walter Homes, Inc. v. Prine, XXXX-XXXX, p. 8 (La.App. 1st Cir.2/15/02), 808 So.2d 818, 824. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Id.
Teano asserts that the hearing officer erred in finding that Teano made false representations by failing to answer interrogatories regarding the identity of his family physician and his medical treatment before the accident. Teano asserts that he was instructed not to answer the interrogatories addressing the identity of physicians he had seen in the past and his *721 medical history. However, the record only shows that Teano was instructed not to answer interrogatory number 5. As the hearing officer found, via other interrogatories, Teano was specifically asked whether he had previously sought treatment for the types of injuries, both physical and mental, for which he complained. Teano answered that he did "not recall ever having been treated for any injures to the right knee and/or mental health related problems prior to the subject accident." Interrogatories requesting that Teano provide the name of his family physician and any other physician he had seen in the past 15 years and requesting that Teano provide certain information concerning his past physical and mental health and treatment were left unanswered. At trial, Teano asserted this was because he couldn't remember. However, even when questioned at trial about his previous depression and anxiety, Teano still asserted he did not remember such.
Teano also asserts that the hearing officer erred when it found that Teano made false representations when he stated that he didn't remember being treated for depression. In addition, Teano asserts that the medical and lay evidence refutes the hearing officer's conclusion that Teano should have remembered the specific nature of his treatment with his primary care physician, Dr. Horsefield, because that treatment was limited in duration, was for basic care and occurred more than a year before the accident.
Teano relies on the testimony of Dr. Denney, who stated that Teano was experiencing concentration problems which marred his ability to remember day to day things. In addition, Teano claims that the evidence refutes the hearing officer's conclusion that Teano should have remembered the specific nature of the treatment he received when he visited the Northshore Hospital more than two years earlier.
However, the hearing officer did not mention the Northshore Hospital as one of the reasons for her findings. Also, although Dr. Denney testified that Teano experienced concentration problems which could hinder his ability to remember things, other doctors testified to the contrary. In fact, Dr. Sweeney testified that Teano was very clear on some details but not on others, and the record clearly confirms that. Generally, the other details were those concerning prior treatment for the type of medical problems Teano was complaining of in this suit. Dr. Sweeney did testify that if someone is depressed it can affect the quality of the history they provide. However, he did not feel that was the case in this instance. Also, Dr. Ginzburg testified that he did not believe Teano's memory was affected. Furthermore, Dr. Sweeney testified that when he questioned Teano about his previous medical history, Teano told him that he was "perfectly healthy" prior to the accident. The record shows this was clearly not the case, and this type of assertion goes beyond Teano simply "failing to remember" past medical treatment, but rather is a completely false assertion which he knew to be incorrect.
Teano also asserts the hearing officer erred in finding that Teano was not suffering from memory problems based exclusively on the testimony of Dr. Ginzburg, who only saw Teano for two hours, who did not have Teano's pertinent medical records, and who did not examine Teano during the time in which he made the allegedly false statements. Teano also asserts that the hearing officer erred in giving greater weight to Dr. Ginzburg's testimony than to that of Dr. Denney.
However, the hearing officer's judgment was not based solely on Dr. Ginzburg's *722 testimony, but on an abundance of evidence, including the previously mentioned testimony of Dr. Sweeney. Dr. Denney classified Teano as having cognitive impairments in concentration and memory. He also stated that patients under a great deal of stress are notoriously bad historians. However, Dr. Ginzburg explained that the type of concentration problems that Teano may have experienced would not have prevented him from remembering the medical problems and treatments about which he was questioned on numerous, in fact many, occasions.
In furtherance of his argument, Teano asserts that Dr. Ginzburg was not given all the pertinent medical records. However, Dr. Denney was also not provided pertinent medical records, such as Dr. Horsefield's records, because Teano did not provide him with those records. In addition, as the hearing officer noted, Dr. Denney claims to have been informed about the rape of Teano's daughter and other problems, including "every last detail" to some extent. However, he states he did not include those items in his report because it was not related to the accident. In fact, Dr. Denney testified that he did not include in his medical reports anything Teano told him that wasn't related to the work related accident. Accordingly, the hearing officer questioned the credibility of Dr. Denney and was correct in giving greater weight to Dr. Ginzburg, the independent medical examiner, than to Dr. Denney.
Also, weighing against Dr. Denney's conclusions is the fact that the Global Medical Center records show that Teano was able to remember approximately four months before the accident being treated by Dr. Horsefield for depression. Furthermore, Dr. Horsefield's records show that Teano was taking medication, such as Wellbutrin when he visited Dr. Horsefield on April 10, 2000, less than three months before the accident in question. As the hearing officer noted, the "treatment which Mr. Teano failed to disclose to his employer or his doctors or claims to not remember was so close in time to his July 5, 2000 injury it is inconceivable that he forgot about it."
Furthermore, there was conflict between the testimony of Dr. Denney and that of the other doctors. The hearing officer's findings were thus based on her credibility determinations. These findings should not be disturbed on review. Rhodes, 2001-2279 at p. 3, 822 So.2d at 117.
Teano also asserts that the hearing officer erred in finding that Teano willfully made false statements because, due to Teano's state of mind, he lacked the requisite knowledge and willfulness to violate R.S. 23:1208.
In support of that argument, Teano cites Sumner v. Lake Charles Marine, 96-280 (La.App. 3rd Cir.6/5/96), 676 So.2d 653, writ denied, 96-1772 (La.10/11/96), 680 So.2d 645. In Sumner, the court held that the claimant made a false statement concerning his injuries. However, the court held that the claimant did not forfeit his benefits because the statement was not willfully made. In reaching this conclusion, the court noted the defendant's lack of education, severe pain exacerbated by the defendant's refusal to authorize pain management and his depression. Sumner, 96-280 at p. 4, 676 So.2d at 655. However, in the case sub judice, even though Teano left high school after the eleventh grade, he did receive his GED and went to Delgado college. The record also shows he was the captain of a boat in the Mississippi River. Furthermore, in Sumner the claimant initially gave a direct and full account of his injuries. Contrarily, Teano never did so. Also, in Sumner, the court stated that the claimant's false statements *723 did nothing to help him obtain benefits. Sumner, 96-280 at p. 5, 676 So.2d at 656. However, in the case sub judice, Teano's misrepresentations concerning his prior depression relate directly to his claim for benefits since he alleges his depression, allegedly stemming from the accident, is preventing him from going back to work. It is also important to note that Teano did not begin complaining of depression to ECC and asserting that it was keeping him from work until McNabb began providing him with job opportunities.
The record is replete with instances in which Teano stated he was not able to remember any previous treatment, including those instances in answers during his deposition, his response to interrogatories, his testimony in court, and his related history when examined by doctors.
Based on the foregoing, we cannot say the hearing officer erred in finding that Teano violated the provision of La. R.S. 23:1208.

EXPERT WITNESS FEES
Teano asserts the hearing officer signed a judgment taxing the costs of the experts to Teano. He alleges that the hearing officer erred in assessing those costs to him on the basis that ECC did not file the motion to tax costs until after the hearing officer signed the May 10, 2002 judgment. However, even though there is a judgment dated November 2, 2002 attached to Teano's brief, the motion to tax costs and the judgment awarding those costs are not found in the record. In addition, that judgment shows that a separate hearing was held on the issue and the November 2, 2002 judgment was rendered pursuant to that hearing. The proper procedure for Teano to have had that judgment reviewed would have been to appeal that judgment.

ASSESSMENT OF CIVIL PENALTY
Teano also asserts that the hearing officer erred "when it assessed a civil penalty against Mr. Teano in the amount of $5,000.00 pursuant to [La. R.S. 23:1208(D) ]." However Teano did not brief this assignment of error. Rule 2-12.4, Uniform RulesCourts of Appeal, states, "[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." La. R.S. 23:1208(D) states, in pertinent part:
In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars.
Clearly, the hearing officer has discretion in assessing a civil penalty of up to $5,000.00. Teano has not stated how the hearing officer abused its discretion in awarding the $5,000.00 penalty. Accordingly, we affirm that part of the judgment.

REIMBURSEMENT OF BENEFITS
ECC answered the appeal of Teano and asserted that the hearing officer erred in failing to award ECC restitution pursuant to La. R.S. 23:1208(D). La. R.S. 23:1208(D) states, in pertinent part:
In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be ... ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct. (emphasis added.)
*724 The word "shall" is mandatory and the word "may" is permissive. Hoag v. State ex rel. Kennedy, XXXX-XXXX, p. 9 (La.App. 1st Cir.11/20/02), 836 So.2d 207, 216, writ denied, XXXX-XXXX (La.3/28/03), 840 So.2d 570. La. R.S. 23:1208 does not mandate that the hearing officer order restitution. The awarding of restitution lies within the discretion of the hearing officer. Rhone v. Boh Brothers, XXXX-XXXX, pp. 6-7 (La.App. 4th Cir.12/12/01), 804 So.2d 764, 768-769. In its answer to this appeal, ECC does not show how the hearing officer abused that discretion. See Rhone, XXXX-XXXX, 804 So.2d 764; See also Rule 2-12.4, Uniform Rules, Courts of Appeal.

DECREE
For the foregoing reasons, the judgment of the Office of Workers' Compensation Hearing Officer is affirmed. Teano is to pay all costs of this appeal.
Affirmed.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Teano's visits to Dr. Horsefield in 2000 were not for anxiety and depression, but Horsefield's records show that Teano was still taking Wellbutrin at that time.