STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-802

LUTHERINE B. ASHWORTH

VERSUS

WAL-MART STORES, INC.

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 00-06834
JAMES L. BRADDOCK, WORKERS COMPENSATION JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

AFFIRMED.

S. Christie Smith, IV
The Smith Law Firm
P. O. Drawer 1528
Leesville, LA 71496-1528
(337) 239-2244
Counsel for Plaintiff/Appellee
    Lutherine B. Ashworth

Charles Martin Kreamer, Sr.
Allen & Gooch
1015 St. John Street
Lafayette, LA 70502-3768
(337) 291-1390
Counsel for Defendant/Appellant
    Wal-Mart Stores, Inc.

GREMILLION, Judge.

The defendant, Wal-Mart Stores, Inc., appeals the judgment of the trial court denying its request for restitution from the plaintiff, Lutherine Ashworth, based on La.R.S. 23:1208 fraud.  For the following reasons, we affirm.

## FACTS

Ashworth suffered an alleged work-related injury to her lower back on March 6, 1999, while scanning a box of weights for a customer.  She was initially treated by her family doctor, Dr. Ashar Qarni, for complaints of lower back pain, which radiated down into her right leg.  A March 16, 1999 MRI revealed a dorsal extrusion of the L4-5 disc.  A March 31, 1999 EMG and nerve conduction study by Dr. Riad Haj Murad, a neurologist, revealed irritability of the L5-S1 myotome suggestive of possible radiculopathy.  Ashworth was then referred to Dr. James Perry, an orthopedic surgeon, who performed a discogram which was positive at L4-5 and L5-S1, with concordant pain reproduction.  He then performed an intradiscal electrothermal therapy or IDET procedure, which failed to relieve her lower back pain.  Ashworth underwent a functional capacity evaluation, which placed her in a sedentary work level.  However, it noted that she appeared to self-limit in her performance and that severe pain made an accurate determination of her overall capabilities difficult.  A July 7, 2000 MRI revealed a broad based diffuse bulge at L4-5, with associated articular facet degeneration resulting in bilateral neural foraminal narrowing.  Dr. Perry diagnosed Ashworth with degenerative disc disease at two levels, with mild stenosis at L4-5. He found her only fit for sedentary work that required her to change positions frequently.

1

Ashworth underwent a second medical opinion with Dr. Stan Foster, an orthopedic surgeon, on June 30, 1999. She told him that she had no previous history of back or neck injury. After examining her and reviewing her previous diagnostic studies, Dr. Foster felt that she would eventually require surgical decompression and/or fusion.

Dr. Mark Dodson, an orthopedic surgeon, performed an independent medical examination Ashworth on March 6, 2000, at which time she denied any injury prior to March 6, 1999. He diagnosed Ashworth with chronic back pain, finding that the majority of her pain was located along the lumbar paraspinious musculature. He recommended that she undergo physical therapy, but did not feel that she required surgery. He felt that she could return to light or sedentary work after she gained relief from muscle spasms in her lower back.

Ashworth underwent a further second medical opinion by Dr. David DeLapp, an orthopedic surgeon, on August 10, 2000. She told Dr. DeLapp that she had no previous history of low back pain. He recommended that she undergo physical therapy, a functional capacity evaluation, a consultation for chronic pain management, and psychiatric consultation for chronic pain. Although Dr. DeLapp believed that Ashworth would have chronic pain for the remainder of her life, he felt that she should be able to return to sedentary work.

Ashworth received both indemnity and medical benefits as a result of this injury. On August 7, 2000, Wal-Mart terminated her benefits based on a taped conversation between her and an insurance adjustor and a subsequent video surveillance tape. As a result of this action, Ashworth filed a disputed claim for

2

compensation seeking the reinstatement of her benefits as well as vocational rehabilitation. In its first amending answer, Wal-Mart contended that Ashworth forfeited any rights to workers' compensation benefits based on La.R.S. 23:1208 fraud. It further sought full restitution of approximately $40,000 it paid her in medical expenses, indemnity benefits, and other expenses.

At the start of the hearing on the merits, Ashworth waived her right to any further indemnity or medical benefits arising from the March 6, 1999 accident. The only issues remaining was whether Ashworth violated La.R.S. 23:1208 and whether Wal-Mart was entitled to restitution. At the close of evidence, the workers' compensation judge took the matter under advisement. He then issued an oral ruling finding that Ashworth had not committed fraud for the purpose of obtaining compensation benefits in her statements to her treating physicians denying any previous similar type of back injury. However, the workers' compensation judge found that she committed fraud with regard to her claim for mileage reimbursement based on an August 7, 2000 off-work slip from Dr. Perry's office. Based on this finding, the workers' compensation judge held that Ashworth forfeited all rights to benefits as of August 7, 2000, which she had already waived. He further denied Wal-Mart's request for restitution. A judgment was rendered in this matter. This appeal by Wal-Mart followed.

**ISSUES**

On appeal, Wal-Mart argues that the workers' compensation judge erred in denying its request for restitution based on the fraud committed by Ashworth.

3

## FORFEITURE OF BENEFITS

La.R.S. 23:1208(A) provides, "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Thus, in order for an employer to prove forfeiture pursuant to La.R.S. 23:1208, it must prove that a false representation was willfully made by the employee for the purpose of obtaining compensation benefits. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7. An inadvertent or inconsequential false statement will not result in the forfeiture of benefits. *Jim Walter Homes, Inc. v. Prine*, 01-116 (La.App. 1 Cir. 2/15/02), 808 So.2d 818. In addition to assessing an employee with civil penalties, a workers' compensation judge may also order restitution for any benefits or payments obtained through fraud. La.R.S. 23:1208(D). Whether an employee has forfeited her right to such benefits is a question of fact, which will not be reversed on appeal in the absence of manifest error. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227. La.R.S. 23:1208(D) provides, "In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties . . . and *may* be ordered to make restitution." Thus, the awarding of restitution lies within the discretion of the workers' compensation judge. The award or failure to award restitution will not be reversed in the absence of an abuse of discretion. *See Teano v. Electrical Constr. Co.*, 02-2032 (La.App. 1 Cir. 5/9/03), 849 So.2d 714.

In denying Wal-Mart's request for restitution, the workers' compensation judge stated that he was doing so based upon his finding that none of the payments made to Ashworth prior to August 7, 2000, were based upon any fraudulent misrepresentations by her. He stated that the basic proposition raised by Wal-Mart was that Ashworth was untruthful to her treating physicians regarding any prior back problems. Although Ashworth told the physicians that she had suffered no prior back problems, the evidence showed that she was treated for lower back pain by Dr. Chanh Vinh, a general practitioner, in 1990 and 1994, and by Dr. Qarni in 1998 and 1999.

Dr. Vinh's medical records show that Ashworth was referred to physical therapy for treatment of a lumbosacral strain suffered while employed as a bus driver by the Vernon Parish School Board in November 1990. In 1994, she underwent a CT scan of her lumbar spine, which revealed evidence of a central disc at L4-5, with obliteration of the neural foramina bilaterally. She was examined by Dr. John Raggio, a neurosurgeon, on July 18, 1994, for complaints of low back pain at the left posterior superior iliac area. X-rays revealed mild degenerative changes at L4-5. On August 25, 1994, Dr. Vinh diagnosed Ashworth with a lumbosacral strain and left sciatica.

Ashworth was seen by Dr. Qarni on October 30, 1998, at which time, she complained of low back pain. She also complained of low back pain on February 18, 1999. On March 10, 1999, after her work-related injury, she complained of lower back pain, which radiated down into her right leg.

In making his ruling, the workers' compensation judge had the benefit of all of the evidence which had been introduced into the record. This included Drs. Vinh's, Qarni's, Perry's, DeLapp's, Dodson's, Foster's, and Haj Murad's medical

5

records, Drs. Qarni's and Perry's depositions, and Ashworth's deposition and her testimony at trial. It further included the deposition of Stephanie Toup, the claims adjustor for Claims Management, Inc., the third-party handler of the claim, the recorded telephone conversation between Ashworth and Diane Knighting, the former claims adjustor, as well as the surveillance video of Ashworth taken by CMI's investigator on August 7-8, 2000.

After taking the matter under advisement, the workers' compensation judge held that Ashworth did not make any willful misrepresentations to Wal-Mart or the physicians for the purpose of obtaining compensation benefits. Citing *Fuselier v. Kaough & Associates*, 00-1750 (La.App. 3 Cir. 5/2/01), 784 So.2d 830, the workers' compensation judge found that Ashworth was an unsophisticated person, with an eleventh grade education, who had not misled any of the physicians when she reported that she had suffered no similar back problems or injuries prior to this injury. In reviewing her medical records, he found that she had never reported suffering "numbness and tingling or a hot sensation and numbness or tingling down the right side," rather, her prior complaints were all of low back pain or left-sided problems. Thus, the workers' compensation judge held that Ashworth's failure to report her prior lower back pain to her treating or examining physicians was not done willfully.

The workers' compensation judge also found that it was insignificant that Ashworth answered "no" to a question in an Associate Statement for Wal-Mart, that asked, "Have these parts ever been injured before?" He further found irrelevant the information she gave Wal-Mart about her past employment, since Ashworth did not miss any work as a result of the back strain she suffered as a bus driver for Vernon

6

Parish School Board in 1990. With regard to the surveillance video, the workers' compensation judge stated that it "shows no compelling evidence to the Court that Ms. Ashworth is capable of any type of sustained work activity."

Although the workers' compensation judge does not mention the August 11, 2000, recorded conversation between Knighting and Ashworth in his oral reasons, the conversation was in the record, as well as Ashworth's testimony concerning it, both in her deposition and during the trial. Accordingly, we assume this was considered by the workers' compensation judge in reaching his decision to deny restitution.

The awarding of restitution pursuant to La.R.S. 23:1208(D) is discretionary, rather than mandatory. After considering the record in its entirety, we cannot say that the workers' compensation judge abused his discretion in denying Wal-Mart's request for restitution.

## CONCLUSION

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. The costs of this appeal are assessed to the defendant-appellant, Wal-Mart Stores, Inc.

**AFFIRMED.**