960 So.2d 1161 (2007)
Marcelino HERRERA
v.
The CAJUN COMPANY.
No. 2006-CA-1627.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 2007.
*1162 Marcelino Herrera, Lufkin, TX, In Proper Person, Plaintiff/Appellant.
Philip J. Borne, Christovich & Kearney, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY and Judge ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff, Marcelino F. Herrera, appeals from a judgment of the Office of Workers' Compensation dated April 2, 2005. The trial judge found that Mr. *1163 Herrera had not carried his burden of proving that he suffered a work-related accident that resulted in any disability or aggravation of any pre-existing condition. The trier of fact found further that Mr. Herrera is not entitled to any workers' compensation medical or indemnity benefits for the alleged accident. The final judgment dismissed Mr. Herrera's claim with prejudice, and assessed all costs to him. The judgment also dismissed the fraud claim filed pursuant to La.R.S. 23:1208 by Mr. Herrera's employer, The Cajun Company (Cajun).
The Workers' Compensation Judge granted a suspensive appeal by orders dated April 29, 2005 and May 3, 2005[1], returnable to this Court on August 21, 2005. The trial court granted Mr. Herrera's request to proceed in forma pauperis on July 6, 2006.
On February 22, 2007, Mr. Herrera filed in this court an unsigned, one single-spaced eight and one-half inch by eleven inch page entitled "Brief". This document consists of Mr. Herrera's statement of the facts surrounding his alleged work-related accident[2].
Mr. Herrera's brief does not claim that the trial court committed any legal error or that its factual findings were manifestly wrong. In light of the absence of any allegation of legal or factual error, we affirm the judgment of the trial court insofar as it dismisses Mr. Herrera's claim with prejudice and assesses all costs against Mr. Herrera.
Cajun answered the appeal, seeking restitution pursuant to the provisions of La. R.S. 23:1208.
In its reasons for judgment, the trial court made the following factual findings:
(1) Despite having carefully considered that any answers or actions by Mr. Herrera might have been caused by his confusion in testifying in English, which is not his native language, he was not a credible witness at trial or elsewhere.
(2) Although Mr. Herrera has some major medical disabilities, he did not prove that they were caused by a work-related accident. The court-appointed independent medical expert, Dr. George Murphy, opined that he could not relate Mr. Herrera's medical problems to the alleged accident.
(3) "It was a close call" but the trial court did not find that Mr. Herrera had the intent to defraud his employer and denied relief under La.R.S. 23:1208.
It is with respect to this third finding that Cajun appeals.
Louisiana Revised Statutes 23:1208 provides in pertinent part:

*1164 A. It shall be unlawful for any person, for the purpose of obtaining . . . any benefit or payment under the provisions of this Chapter, . . . to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
Cajun has the burden of showing that (1) Mr. Herrera made a false statement or representation; (2) that he made it willfully; and (3) that he made it for the purpose of obtaining a benefit or payment under the workers' compensation statute. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7. The Louisiana Supreme Court discussed the application of the statute in these terms:
Louisiana Revised Statutes 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of an employee's accident or claim. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Resweber v. Haroil Const. Co., at pp. 1-2, 660 So.2d at 9.
The Supreme Court found Section 1208 to be "clear and unambiguous" and to be "applied as written". Id. at p. 7, 660 So.2d at 12. The court also addressed the legislative intent of the anti-fraud statute:
The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent. Prior to 1989, Section 1208 required a criminal conviction under its provisions before the employee forfeited his benefits. However, the legislature eliminated the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture of benefits by amending Section 1208 to require only a "violation" of the Section. 1989 La. Acts. No. 454. Thus, the legislature chose to make it easier to establish grounds for a claimant's forfeiture of benefits. H. Alston Johnson, Workers' Compensation Developments in the Law, 50 La.L.Rev. 391, 401 (1989). A 1992 amendment to Section 1208 added civil penalties to the criminal penalties and made clear that a hearing officer is to determine whether a claimant violated the section, resulting in the disqualification from receiving benefits.[3] 1992 La. Acts. No. 763. See generally, Denis Paul Juge, Louisiana Workers' Compensation § 6:3 (1995). The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored. Id. at pp. 7-8, 660 So.2d at 12-13.
Applying the manifest error standard of review, the court reinstated the workers' compensation judge's imposition of the *1165 statutory penalty in Mr. Resweber's case based on his denial of any prior back injury more serious than a pulled muscle. He denied prior serious medical problems and intermittent low back pain with left lower extremity symptoms below the knee to the ankle prior to the date of his alleged on-the-job injury. These statements were contradicted by the evidence, showing that in 1989 he was treated for a two month history of low back pain with radiating pain in the right leg, which he incurred when weight lifting. Because Mr. Resweber and his parents were present in 1989 when the doctor discussed the weight-lifting injury in detail, the hearing officer concluded that both Mr. Resweber and his parents knew that he had a possible herniated disc at that time. The officer rejected Mr. Resweber's claim that he "maybe just did not remember", noting that this kind of pain is not easily forgotten and found it incredible that Mr. Resweber could not remember in August of 1992 the pain he described to the attending physician in 1989.
The court also affirmed the appellate court's affirmance of a hearing officer's imposition of Section 1208 restitution in the consolidated claim of Roderick Storks against Manpower Temporary Services, Inc. (Manpower) In that matter, Mr. Storks was found to have injured his lower back in June, 1992. He then applied for work with Manpower, denying any disabling injury. He then allegedly injured himself in September, 1992, while working for Manpower. He gave two false statements, denying the prior back injury and denying having worked for his previous employer.
A sharply divided panel of the Louisiana Court of Appeal, Third Circuit, reversed a hearing officer's finding denying the statutory penalty in Menard v. Mama's Fried Chicken, 97-488 (La.App. 3 Cir. 3/6/98), 709 So.2d 303. The appellate court noted that Ms. Menard denied prior back injuries, prior treatment by physicians, prior domestic and civil claims, and prior convictions, and did not reveal the truth until confronted. There is no indication in the opinion that Ms. Menard's educational and language background limited her understanding in any way. Mr. Herrera, in contrast, testified both at his deposition and at trial to his prior accidents. His case is similar to that decided by the same court in Sumner v. Lake Charles Marine, 96-280 (La.App. 3 Cir. 6/5/96), 676 So.2d 653, where the plaintiff denied prior back injury in his deposition, but admitted that he suffered injuries in a previous accident. The court declined to impose the statutory penalty in Sumner.
A hearing officer's failure to impose the statutory penalty was reversed in Bass v. Allen Cannery Co., Inc., 30,635 (La.App. 2 Cir. 6/26/98), 715 So.2d 142. Again, there is no indication of any limitation of Ms. Bass's understanding, and the appellate court specifically found that the record provided no factual support for a conclusion that Ms. Bass misunderstood the questions asked of her at deposition and at trial.
We recognize that the manifest error standard of review strictly limits an appellate court's ability to modify factual findings of the trier of fact. It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Appellate courts must constantly *1166 have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error  clearly wrong standard demands great deference to the trier of fact's finding. However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But, where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
The hearing officer's basis for denying statutory restitution was the finding that Mr. Herrera did not intend to misrepresent the facts. This Court has held that statutory forfeiture is a harsh remedy that must be strictly construed. Hernandez v. ESCO, Inc., 00-0174, p. 3 (La.App. 4 Cir. 11/15/00), 773 So.2d 865, 867. In determining whether a statement is willful, the courts have considered whether the statement is merely inadvertent or inconsequential. Inadvertent or inconsequential statements will not give rise to a finding of willful misstatement, triggering statutory penalties. Id., cited in Meyer v. Carr Stone & Tile Co., 01-1422, p. 4 (La.App. 4 Cir. 3/13/02), 813 So.2d 529, 531-32.
Black's Law Dictionary 759 (6th ed.1990) defines inadvertence:
Heedlessness; lack of attention; want of care, carelessness; failure of a person to pay careful and prudent attention to the progress of a negotiation or a proceeding in court by which his rights may be affected. Used chiefly in statutory and rule enumerations of the grounds on which a judgment or decree may be vacated or set aside; as, "mistake, inadvertence, surprise, or excusable neglect." [Citations omitted.]
It is our constitutional duty on appeal to determine whether, applying the manifest error standard of review, it is reasonable to conclude that the admittedly false statements made by Mr. Herrera were merely inadvertent or inconsequential.
In the instant case, we are faced with a record containing numerous internal inconsistencies and self-contradictions in Mr. Herrera's trial and deposition testimony. Indeed, these statements were the basis for the hearing officer's conclusion that Mr. Herrera's testimony as to his accident was not worthy of belief. The record clearly supports that conclusion. However, the record taken as a whole also supports the hearing officer's conclusion that Mr. Herrera's lack of formal education, confusion and limited understanding of the English language made his misstatements inadvertent.
The parties stipulated that Mr. Herrera was employed by Cajun on August 29, 2002, the date on which he alleges he was injured on the job.
Mr. Herrera introduced the records of his treating physician, Dr. Michael Brantmeier, D.C. Dr. Brantmeier is Vice-President of Physicians Total Rehabilitation. According to the history Mr. Herrera gave to Dr. Brantmeier, he was working for Cajun on September 5, 2002 on the second floor of a platform when three hoses hanging on the third floor of a platform fell on him. According to Mr. Herrera, this was the last day of work. A couple of days later, he felt discomfort all over his body and, although he tried to go to work at another job, he felt worse, especially when climbing stairs. As the days went by, his condition worsened. On October 9, 2002, *1167 he saw Dr. Brantmeier, and complained of neck, shoulder, mid back and low back pain and radiating pain from hips, buttocks and both legs, together with thumb and finger numbness, headaches and trouble sleeping. In his Application for Treatment dated October 9, 2002, Mr. Herrera left blank his past history, a section of the application eliciting information as to medical treatment in the past year, any chiropractic treatment, dates of any operations, unusual diseases, serious illnesses or accidents he had had, including broken bones, and a list of all drugs recently used. On January 28, 2003, Dr. Brantmeier wrote to Cajun's attorney, describing the accident as set forth in the notes of his initial interview with Mr. Herrera.
Cajun offered a 1987 record from Charity Hospital at New Orleans in which Mr. Herrera gave a history of having fallen down five steps on February 15, 1987, as a result of which he was complaining of worsening pain from the neck down. He continued to be treated as an outpatient at Charity, as reflected by hospital notes dated March 18, 1987, January 14, 1988 (detailing results of a CT scan), May 8, 1989, December 12, 1989, March 15, 1990, March 19, 1990, January 21, 1994, and January 24, 1994. On August 7, 1998 he was seen by Dr. Edward Halton, M.D. at the Medical Center of Louisiana at New Orleans for low back pain and radiating pain that he claimed to have sustained in an April 1998 motor vehicle accident. According to the history given to Dr. Halton, Mr. Herrera had been sent by his attorney to physical therapy, which he attended once a week for three months without alleviation of his pain. Mr. Herrera was referred to Tulane's neurosurgery department. Cajun offered an MRI report from Crescent City MRI showing that Mr. Herrera underwent an MRI examination on October 23, 1998. Radiologist Dr. Thompson Dietz, M.D. stated his impression:
1. questioned old or chronic spondylolysis at L5 on the right with up to 8mm or so grade I-II anterior spondylolisthesis of L5; asymmetrically pronounced to the right in association with bilateral advanced severe chronic hypertrophic facet joint degenerative change; 3 mm or so circumferential bulge of a narrowed and severely dehydrated L5-S1 disc;
2. combination of above finding productive of asymmetrically pronounced and severe stenosis of the right neural foramen with moderate to severe narrowing and stenosis of the lateral recesses on either side;
3. similar 3 mm or so circumferential bulges of severely dehydrated L3-L4 and L4-L5 discs with fairly advanced chronic bilateral hypertrophic facet joint degenerative change at the L4-5 level on either side;
4. no significant abnormality referable to T-12-L-1 through L2-3 disc levels;
5. recommend routine radiographic correlation.
Cajun offered an Orthopedic Consultation Report by F. Allen Johnston, M.D. dated January 20, 1999, rendered in connection with an automobile accident that allegedly occurred in April 1998. Dr. Johnston recommended an MRI, EMG and Nerve Conduction Studies, continued therapy and an oral anti-inflammatory drug. According to Mr. Herrera's initial report of the auto injury, he denied any previous injury to his neck, shoulders or back. Dr. Johnston released Mr. Herrera to return to full activity on April 7, 1999. Cajun offered billing information as of May 5, 1999 showing 104 visits or specific treatments relating to his back complaints between April 28, 1998 and February 24, 1999.
Cajun offered records from Dr. Andrew Kucharchuk, M.D., beginning on January *1168 20, 1999. In the initial report, the doctor notes that the injury occurred on April 28, 1998 in an automobile accident.
Just over a year later, on June 13, 2000, Mr. Herrera returned to Dr. Johnston, this time complaining of lower back pain and radiating pain down into his right leg with spasm. Mr. Herrera claimed that his injury derived from another automobile accident, this one having occurred on June 3, 2000. Mr. Herrera admitted to only the prior motor vehicle accident. He was seen again on October 18, 2000 and for follow-up on November 28, 2000. At the latter visit, Mr. Herrera said he was much improved but still had some occasional left leg pain. The doctor continued his physical therapy and Celebrex. On October 30, 2000, he received a physical therapy evaluation by Metropolitan Health Group, prescribing physical therapy twice weekly for four weeks. Dr. Johnston saw him again on November 27, 2000 and on January 9, 2001, at which time he was released, having had therapy on November 28, 2000, December 2, 2000, December 7, 2000, December 11, 2000, December 21, 2000 and December 26, 2000. On December 26, 2002, Dr. Johnston issued a letter stating his opinion that the accident of April 28, 1998 caused the injuries described in his report of January 20, 1999.
Cajun offered a note from Metropolitan Health Group showing that Mr. Herrera was seen there on May 28, 1998. Notes of Dr. Norman D. Ott, M.D., of the Group, indicate that he saw him in connection with the April 28, 1998 accident and diagnosed cervical and lumbar strains on July 27, 1998. Dr. Ott prescribed thrice weekly physiotherapy treatments.
Subsequent to this history, in connection with his application for employment by Cajun, Mr. Herrera submitted a medical questionnaire in which he was asked if he had then or previously any of certain diseases or injuries, and checked "no" with respect to all diseases and injuries, including disease of or injury to joints, back, frequent headaches, and backaches. We note that his medical history, as provided by Cajun, demonstrates that Mr. Herrera's responses to those questions were inaccurate. Mr. Herrera testified at trial that he did not read the form, and filled it out from his memory of a previous form he had completed, and that his supervisor told him to write "no" to each question.
The parties stipulated that Mr. Herrera received a copy of his deposition within 30 days of the date it was taken. He was not represented by counsel at his deposition.
Mr. Herrera testified that he received formal education through eighth grade level in his native Peru. He testified that although he could understand written and oral English, he was unable to write in that language. At trial, he noted that his reading ability was also limited. In the course of his testimony, it was clear that at times his understanding of the questions and of the answers they elicited was limited.
He testified that he came to New Orleans in 1987 and worked for D R Marine from 1987 to 1994. Because the work was not steady, he trained to work in asbestos remediation and worked for Basic Industries, for about four different companies that he could not name from memory from 1994 through 1997 when he went to work for Cajun.
Mr. Herrera testified that his right arm and shoulder were injured in 1998 while he was working for Cajun. He saw a company doctor and received three weeks of physical therapy, whereupon he returned to work. By four or five months after the injury, he was no longer having problems with his arm, but the shoulder problem never completely went away. He also testified to automobile accidents in 1998 and 2002 in which he suffered injuries to his *1169 neck and mid-back for which he received therapy at Metropolitan Health Group.
Cajun laid off Mr. Herrera in April of 2002 and he collected unemployment until Cajun called him back to work in August of 2002. His deposition and trial testimony concerning the date of his August 2002 injury and which of his co-workers were present is inconsistent. Mr. Herrera attributes the inconsistency to his own confusion. The medical records belie Mr. Herrera's claim that he had no lower back symptoms or treatment prior to the accident at issue in this case.
Dr. George A. Murphy, M.D. examined Mr. Herrera on October 21, 2004, and issued a report that same day to the hearing officer. According to that report, Dr. Murphy opined that Mr. Herrera had advanced degenerative changes in his neck and back that pre-existed the reported injury while employed by Cajun. Dr. Murphy concluded that neither of Mr. Herrera's conditions are related to that reported injury.
The record supports the conclusion that Mr. Herrera had limited understanding of English, and limited formal education. It demonstrates that he was a willing worker, who undertook the difficult and dangerous work that was available to him. Based on the record considered in its entirety, we cannot say that the hearing officer's conclusion that Mr. Herrera lacked the intent required by the statute was unreasonable. The record supports a finding that Mr. Herrera's misstatements come within the concept of inadvertence. As inadvertent statements, they do not support imposition of the harsh remedy provided by the anti-fraud statute. The hearing officer's finding that Mr. Herrera did not willfully make false statements or representations for the purpose of obtaining workers' compensation benefits was not manifestly erroneous or clearly wrong. The hearing officer was able to observe Mr. Herrera's demeanor and testimony and to evaluate his level of understanding first-hand. Based on that observation and evaluation, she concluded that Mr. Herrera's misstatements were not intentional and were the result of his limited ability to read relevant documents and to understand his situation. While a review of the cold record might lead another fact finder to reach a different conclusion, we cannot say that the hearing officer's determination was unreasonable under the totality of circumstances presented by this particular case.
For the foregoing reasons, we affirm the judgment of the Louisiana Office of Workers' Compensation Administration.
AFFIRMED.
BELSOME, J. concurs with reasons.
BELSOME, J. concurs with reasons.
I respectfully concur in the result but write separately to recognize a lower court's duty to provide a translator for parties whose primary language is not English. In this instance, the trial judge determined that the presence of a translator was necessary. Thus, the translator assisted the court by eliminating the potential for a misrepresentation or misunderstanding that may have resulted from the language barrier.
NOTES
[1] The Order is dated the "3rd day of May, 2004"; however, it appears that the correct year is 2005.
[2] The brief does not comply with the requirements of Rule 2-12.4, Uniform Rules  Courts of Appeal in the following respects:

(1) It does not set forth the jurisdiction of the court;
(2) It does not contain a concise statement of the case;
(3) It does not refer to the ruling or action of the trial court;
(4) It does not contain a specification or assignment of alleged errors on which he relies;
(5) It does not contain a statement of the issues presented for review;
(6) It does not contain an argument confined strictly to the issues of the case, giving accurate citations of the pages of the record and the authorities cited;
(7) It does not contain a conclusion stating the precise relief sought;
(8) It does not include a copy of the judgment, order, or ruling complained of and a copy of either the trial court's written reasons for judgment, transcribed oral reasons for judgment, or minute entry of the reasons, if given.
[3] In footnote 4, the Supreme Court referred to a 1993 amendment providing more severe criminal penalties and increasing the civil penalties for violation of this section. 1993 La. Acts. No. 829.