JAMES F. McKAY, III, Judge.
 

 | plaintiff, Johnny Bell, Jr., appeals the judgment of the Office of Workers’ Compensation, finding that back surgery was not medically necessary for the injuries sustained in his work-related accident, denying his claim for indemnity benefits, and denying his claim for penalties and attorneys’ fees. Defendant, Mid City Printers, Inc., answers this appeal, asserting that the workers’ compensation judge (“WCJ”) erred in failing to find that Mr. Bell willfully made false statements for the purpose of obtaining benefits. For the reasons set forth below, we affirm.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY:
 

 On May 3, 2001, while acting in the course and scope of his employment as a delivery driver for Mid City Printers, Mr.
 
 *1230
 
 Bell was rear-ended by an eighteen wheeler. Immediately after the accident, Mr. Bell treated at St. Tammany Hospital for neck and back pain. Mid City Printers began paying medical and indemnity benefits to Mr. Bell on May 7, 2001.
 

 Mr. Bell treated with chiropractor Dr. Robert Thompson from May 2001 through May 2003. On May 21, 2001, Dr. Thompson released Mr. Bell to return |2to work with lifting restrictions of less than twenty pounds. On May 23, 2001, Dr. Thomson re-evaluated Mr. Bell and noted that he should be excused from work until his condition improved.
 

 Mr. Bell returned to work with Mid City Printers approximately two weeks after the accident. Indemnity benefits were terminated on June 7, 2001, but medical benefits continued to be paid. Mr. Bell’s indemnity benefits were voluntarily reinstated on June 21, 2009.
 

 On his return to work at Mid City Printers, Mr. Bell was offered the same number of hours at the same rate of pay. Mid City Printers made modifications for Mr. Bell, providing him assistance with heavy lifting. Mr. Bell was permitted to attend his doctors’ appointments during the work day without a reduction in pay. He was also permitted to miss work due to pain as long as he notified his supervisor. Mid City Printers treated these absences as excused absences.
 

 On February 1, 2002, Mr. Bell was terminated from his employment for “excessive absence.” David Mack, Mr. Bell’s supervisor at the time he was terminated, testified at trial that throughout his employment (before and after the accident) Mr. Bell often missed work without calling in. He stated that he warned Mr. Bell more than once, explaining to Mr. Bell that if he kept missing work without calling in, he would be let go.
 

 On May 2, 2002, Mr. Bell filed a disputed claim for compensation, seeking indemnity benefits, medical benefits, penalties and attorneys’ fees. Following his | ^termination from Mid City Printers, Mr. Bell worked for Sycamore Hydraulics, as a delivery driver, from July 30, 2002, until November 18, 2002.
 

 On January 6, 2004, Mr. Bell began treating with Dr. Stefan G. Pribil, a neurosurgeon. Dr. Pribil diagnosed Mr. Bell with a disc herniation at L3-4 and L4-5 with decreased disc space at L5-S1. Dr. Pribil recommended a CT scan and opined that Mr. Bell would need surgical intervention. Dr. Pribil indicated in his January 12, 2007 report that he needed to review Mr. Bell’s MRI, but stated surgery was “an option” at that time because Mr. Bell was not improving with conservative therapy-
 

 Mr. Bell saw Dr. Gregor J. Hoffman for an updated independent medical examination (“IME”) on August 23, 2003, October 23, 2003, and November 22, 2004. After reviewing Mr. Bell’s history and diagnostic studies, Dr. Hoffman noted degenerative disc disease at the L4-5 level together with mild bulges at L3-4 and L5-S1. Dr. Hoffman further indicated that nonoperative treatments had been exhausted, and recommended another MRI, possibly a myelogram/CAT scan. The record does not reflect any follow-up reports by Dr. Hoffman after November 22, 2004.
 

 Mid City Printers sought a second medical opinion from Dr. Robert L. Applebaum, a neurosurgeon. Dr. Applebaum examined Mr. Bell on September 10, 2004, and reviewed Mr. Bell’s history, including Dr. Pribil’s recommendation of surgery. In March 2006, Dr. Applebaum recommended a myelogram followed by a CAT scan. Dr. Applebaum examined Mr. Bell a second time on May 21, 2007, |4and recommended that the myelogram and CAT scan be per
 
 *1231
 
 formed. Dr. Applebaum examined Mr. Bell on November 17, 2008, and reiterated his recommendation for a myelogram and CAT scan. In a May 20, 2009 report, Dr. Applebaum indicated that he was unable to determine the medical necessity of lumbar surgery without the recommended tests. Mr. Bell testified at trial that he was unwilling to undergo the myelogram because he was told it could harm his kidneys (being diabetic) and because other doctors (Dr. Dietze and Dr. Ricciardi) said they would not recommend a myelogram.
 

 Mr. Bell treated with Dr. David Shawa, Dr. Joseph Crapanzano, Jr., and Dr Adrian Blotner for pain management, receiving epidural steroid injections and various pain medications. Beginning July 2007, through the date of trial, Mr. Bell treated with Dr. James B. Denney for pain management. Dr. Denney prescribed pain medications and conducted random drug screenings to ascertain whether Mr. Bell was compliant with his medications.
 

 The drug screening conducted February 1, 2008, demonstrated that Mr. Bell tested negative for his prescribed medication, Soma, in spite of the fact that Mr. Bell claimed to have taken the medication at 8:00 a.m. that morning. Mr. Bell also tested positive for marijuana at that time.
 

 A follow-up drug screening on February 2, 2009, demonstrated that Mr. Bell tested negative for Soma and Valium (both prescribed by Dr. Denney) even though Mr. Bell indicated that he took Soma at 8 p.m. the night before and Valium at 8:00 15a.m. that morning. The screening also demonstrated that Mr. Bell tested positive for marijuana and amphetamines (not prescribed by Dr. Denney).
 

 Dr. Denney stated in his deposition that testing negative for Soma and Valium was inconsistent with Mr. Bell’s claims that he was taking his medications as prescribed. He explained that Mr. Bell admitted to using marijuana, but claimed he did not know what amphetamines were. Dr. Den-ney found that claim to be incredulous. Dr. Denney further explained that there was some concern that Mr. Bell could have been selling his medications on the street. He considered sending Mr. Bell for substance abuse counseling, but wanted to continue his medications through surgery and make changes thereafter.
 

 At trial, Mr. Bell stated that he could not explain the discrepancy concerning the negative test results for Soma and Valium. He admitted that he was given an amphetamine by a friend, only once in February 2009. The record reflects, however, that Mr. Bell tested positive for amphetamines and marijuana on March 12, 2008, at Lake-view Regional Medical Center Emergency Room after an automobile accident.
 

 On February 2, 2009, after Dr. Pribil moved his practice to Texas, Mr. Bell began treating with neurosurgeon Dr. Donald D. Dietze. Following a lumbar disco-gram performed March 5, 2009, Dr. Dietze recommended a lumbar artificial disc replacement at L3-4 and L4-5 and an anteri- or lumbar interbody fusion at L5-S1.
 

 l(;In light of the conflicting medical evidence regarding Mr. Bell’s need for surgery, the WCJ appointed orthopedic surgeon Dr. James E. Ricciardi to conduct an IME. After examining Mr. Bell on July 30, 2009, reviewing test results, and noting Dr. Pribil and Dr. Dietze’s recommendations for back surgery, Dr. Ricciardi opined that Mr. Bell was a surgical candidate, but noted that surgery would not relieve all of Mr. Bell’s pain and may not allow him to be gainfully employed. Dr. Ricciardi later clarified his opinion in his September 24, 2009 deposition by explaining that he never said surgery was necessary. Rather, he considered surgery to be an option for Mr. Bell.
 

 
 *1232
 
 On October 16, 2009, Mid City Printers was granted leave to file a supplemental answer to Mr. Bell’s disputed claim for compensation, wherein Mid City Printers alleged that Mr. Bell violated La. R.S. 23:1208 by making false statements to Dr. Denney (that he was compliant with his medications) for the purpose of obtaining workers’ compensation benefits.
 

 The matter was brought for trial on October 23, 2009. Mid City Printers objected to the introduction of Dr. Pribil’s depositions, dated June 22, 2004, and January 11, 2005, on the basis that the depositions were not listed on Mr. Bell’s pre-trial statement, and only a two-day notice was provided. Mid City Printers also objected to the introduction of the depositions because Dr. Pribil was deposed in connection with Mr. Bell’s tort action, not the instant case. The WCJ denied introduction of the depositions, but allowed Mr. Bell to make a proffer.
 

 |7Following a three day trial, the WCJ rendered judgment, finding: 1) Mr. Bell failed to carry his burden that Mid City Printers violated La. R.S. 23:1208; 2) Mr. Bell was not entitled to indemnity benefits from February 1, 2002 (the date of termination from Mid City Printers), through June 21, 2009 (the date indemnity benefits were reinstated); 3) Mr. Bell did not have a loss of earning capacity and was therefore not entitled to vocational rehabilitation services; 4) the surgery recommended by Dr. Dietze was not medically necessary for the injuries Mr. Bell sustained in his work-related accident; and 5) Mid City Printers failed to carry its burden that Mr. Bell violated La. R.S. 23:1208 by willfully making false statements for the purpose of obtaining benefits. Mr. Bell’s timely appeal followed.
 

 DISCUSSION:
 

 It is well settled that factual findings in workers’ compensation cases are subject to the manifest error-clearly wrong standard of appellate review.
 
 Dean v. Southmark Constr.,
 
 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. In applying the manifest error-clearly wrong standard, the appellate court must determine whether the factfinder’s conclusion was reasonable, not whether the trier of fact was right or wrong.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840, p. 6 (La.7/1/97), 696 So.2d 551, 556.
 

 Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the | ^variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Id.
 

 In this appeal, Mr. Bell contends that the WCJ erred in four respects: 1) refusing to admit Dr. Pribil’s depositions into evidence; 2) finding that Mr. Bell failed to carry his burden of proof for entitlement to back surgery; 3) denying Mr. Bell indemnity benefits from February 1, 2002, through June 21, 2009; and 4) failing to award Mr. Bell penalties and attorneys’ fees for Mid City Printers’ arbitrary and capricious handling of his claim.
 

 Mid City Printers answered the appeal asserting that the WCJ erred in failing to find that Mr. Bell willfully made false statements for the purpose of obtaining benefits. We separately address each of these contentions.
 

 
 *1233
 

 Assignment of Error No. 1: The WCJ erred in failing to admit Dr. Pribil’s depositions into evidence.
 

 At trial, Mr. Bell attempted to introduce Dr. Pribil’s depositions due to the fact that Dr. Pribil no longer resided in Louisiana and was “unavailable” for trial. Mid City Printers objected to the introduction of the depositions on the grounds that Mr. Bell faded to list the depositions on the pretrial order and failed to provide timely notice pursuant to La. C.C.P. art. 1450.
 
 [1]
 

 Mid City Printers further objected to the introduction of the depositions because Dr. Pribil was deposed in Mr. Bell’s tort action, in which Mid City Printers was not a party. Counsel for Mid City Printers explained that because he attended the depositions on behalf of the workers’ compensation insurer/intervenor, he was unable to participate fully on behalf of Mid City Printers.
 

 1 ¡¡Finding that Mr. Bell failed to comply with the pretrial order and notice requirements mandated by La. C.C.P. art. 1450, and finding that Mid City Printers’ counsel did not have the opportunity to “meaningfully cross examine” Dr. Pribil on behalf of Mid City Printers, the WCJ denied introduction of the depositions. Mr. Bell submits that the WCJ’s evidentiary ruling is manifestly erroneous.
 

 Provided that it is not contrary to law, a trial court’s rulings in pretrial matters are generally given great deference absent an abuse of discretion.
 
 Munster v. Bill Watson Ford, Inc.,
 
 2007-0294, p. 3 (La.App. 4 Cir. 10/24/07), 970 So.2d 36, 38-39. Additionally, trial courts enjoy great discretion with regard to modification or enforcement of pre-trial orders.
 
 Id.
 
 Moreover, “it is well established that the trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion.”
 
 Boutte v. ABC Ins. Companies,
 
 2000-0649, p. 8 (La.App. 4 Cir. 2/6/02), 811 So.2d 30, 35.
 

 Our review of the record reveals no abuse of discretion in denying the introduction of the depositions, inasmuch as Mr. Bell clearly failed to comply with the pretrial order. Furthermore, assuming arguendo that the WCJ erred in denying the introduction of Dr. Pribil’s depositions, it was harmless error as there has been no showing that Mr. Bell was prejudiced by the exclusion of this evidence. Dr. Pribil’s detailed medical reports were introduced into evidence. Additionally, Dr. Pribil’s findings and recommendations for surgery were considered and referenced in the medical records of Dr. Applebaum, Dr. Dietze, and Dr. Ricciardi, all of which were admitted into evidence. Thus, the exclusion of this evidence, when | ^viewed in context of the record as a whole, would have had no effect on the outcome of the trial.
 

 Assignment of Error No. 2: The WCJ erred in finding that Mr. Bell failed to carry his burden of proof for entitlement to back surgerg.
 

 With regard to medical treatment, La. R.S. 23:1203(A) provides that the employer shall provide all necessary treatment, including “medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as
 
 *1234
 
 legal.” To recover medical expenses under La. R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury.
 
 Schindler v. Orleans Regional Security,
 
 2003-0522, p. 9 (La.App. 4 Cir. 12/3/03), 862 So.2d 1032, 1039. The assessment of the necessity of medical treatment is a factual determination that is made by the WCJ, and the factual findings are subject to the manifest error-clearly wrong standard discussed above.
 
 Evans v. Waste Management of New Orleans,
 
 2004-2043, p. 4 (La.App. 4 Cir. 5/11/05), 904 So.2d 38, 40.
 

 Mr. Bell asserts that the WCJ erred in failing to accord greater weight to the opinion of his treating physician, Dr. Dietze, than to Dr. Ricciardi, the court-appointed IME. Mr. Bell relies on the general jurisprudential rule that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice.
 
 Williams v. Wal-Mart Stores, Inc.,
 
 2000-0863, p. 6 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134, 1137. However, it is also well established that the treating physician’s testimony is not irre-buttable, and the trier of fact is required to weigh the testimony of all medical witnesses.
 
 Id.
 

 InLa. R.S.
 
 23:1123,
 
 which provides for the appointment of an IME when there is a conflict in the medical evidence, provides that the report of the IME shall be
 
 prima facie
 
 evidence of the facts therein stated. The courts have interpreted La. R.S. 23:1123 to mean that an IME’s medical conclusions should be given significant weight because the IME is an objective witness.
 
 Frye v. Olan Mills,
 
 44,192 p. 6 (La.App. 2 Cir. 4/8/09), 7 So.3d 201, 205;
 
 Marks v. 84 Lumber Co.,
 
 2006-0358, p. 7 (La.App. 3 Cir. 9/27/06), 939 So.2d 723, 730. Nevertheless, the opinion of the IME is not conclusive, and the trial judge must evaluate all of the evidence presented in making a decision as to the claimant’s condition.
 
 Richardson v. Lil’ River Harvesting,
 
 2009-1090, p. 2 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419;
 
 Cortez v. East Jefferson General Hospital,
 
 2008-0653, p. 10 (La.App. 5 Cir. 1/13/09), 7 So.3d 707, 713. The weight given to the testimony of an IME can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors.
 
 Green v. Louisiana Coca Cola Bottling Co., Ltd.,
 
 477 So.2d 904 (La.App. 4 Cir.1985).
 

 In the present case, the WCJ relied heavily on Dr. Ricciardi’s opinion (clarified in his September 24, 2009 deposition) that surgery was an option for Mr. Bell, not a necessity. Based on the record evidence reviewed in its entirety, we cannot say that the WCJ erred in relying on Dr. Ricciar-di’s opinion to find that Mr. Bell failed to carry his burden of proof for entitlement to back surgery.
 

 After being provided with the results of the random drug screenings conducted by Dr. Denney, which demonstrated that Mr. Bell was not taking his prescribed pain medications, Dr. Ricciardi was asked during his deposition whether his opinion regarding the surgery had changed, Dr. Ric-ciardi answered: |12“WeIl, of course, in light of the information I was not privy to at the time when I made the report.”
 

 Also during his deposition, Dr. Ricciardi was shown a surveillance video of Mr. Bell dated May 21, 2007. The video shows Mr. Bell walking with a cane while entering and exiting an appointment, but later walking to and from his vehicle in a convenience store parking lot without his
 
 *1235
 
 cane, showing no signs of limping. Dr. Ricciardi was also shown a surveillance video of Mr. Bell, dated June 30, 2007, wherein Mr. Bell is seen in a convenience store parking lot with his pickup truck, attached trailer, and riding lawnmower. Dr. Ricciardi stated that Mr. Bell did not appear to be in great distress in the video. Dr. Ricciardi further stated that the history Mr. Bell gave him, i.e., constant pain at a level of eight or ten out of ten, was inconsistent with what he exhibited in the video. .
 

 Finally, Dr. Ricciardi explained in his deposition that there was only a fifty percent chance that Mr. Bell’s surgery would be beneficial. He further maintained that he would not recommend or perform the surgery on a person like Mr. Bell, who smokes.
 

 Considering the above, we decline to disturb the factual finding made by the WCJ in giving greater weight to Dr. Ric-ciardi’s independent conclusion. The WCJ was not clearly wrong in denying the requested medical procedure. Accordingly, we find no merit in this assignment of error.
 

 Assignment of Error No. 3: The WCJ eiTed in denying Mr. Bell indemnity benefits from February 1, 2002 (date of Mr. Bell’s termination) through June 21, 2009 (date indemnity benefits were reinstated).
 

 In denying Mr. Bell’s claim for indemnity benefits, the WCJ determined:
 

 Mr. Bell was aware of the policy and had been reprimanded by his supervisor, David Mack, for unexcused absences. On February 1, 2002, Employer fired Mr. Bell for “excessive absence.” Thus, Mr. hsBell was capable of employment and would have retained his same pre-accident wage and earning capacity had he not violated company policy and had been fired due to his own actions.
 

 Further evidencing Mr. Bell’s ability to work was the job he held with Sycamore Hydraulics from approximately July 30, 2002, through November 18, 2002. Although there was a difference between Mr. Bell’s earnings while employed at Sycamore and Mid City Printers, Mr. Bell’s earning capacity was not different. Had Mr. Bell not violated company policy and been fired, he would have continued to earn the same wage. Supplemental earnings benefits are designed to compensate people whose earning capacities are impaired by work-related accidents, not people who make less due to their own actions and choices.
 

 The purpose of supplemental earnings benefits (“SEB”) is to compensate the injured employee for the wage earning capacity he or she has lost as a result of an accident.
 
 Bethley v. City of New Orleans,
 
 2006-0921, p. 4 (La.App. 4 Cir. 10/18/06), 945 So.2d 738, 741 (citing
 
 Pinkins v. Cardinal Wholesale Supply, Inc.,
 
 619 So.2d 52, 55 (La.1993)). To qualify for SEB, a claimant is required to prove by a preponderance of evidence that a work-related injury resulted in the inability to earn ninety percent or more of his average pre-injury wage.
 
 Id.
 
 (citing La. R.S. 23:1221(3)(a)).
 

 In
 
 Synigal v. Vanguard Car Rental,
 
 2006-0761 (La.App. 5 Cir. 1/30/07), 951 So.2d 1197, the workers’ compensation claimant returned to work after her accident and was allowed to work in a sedentary capacity. Following a verbal altercation with her supervisor, the claimant was fired for violating company policy against insubordination and using profanities. The employer denied indemnity benefits after the claimant was terminated for cause. The WCJ found in favor of the claimant, awarding her benefits. The ap-
 
 *1236
 
 pelláte court reversed, finding the claimant was not entitled to benefits because she was provided with a job that accommodated her work restrictions and was then terminated for cause, completely unrelated to claimant’s injury and light duty status. The court stated that it would |14be contrary to public policy to force an employer to pay workers’ compensation benefits to an employee who has been provided employment that meets his work restrictions and who is later fired for cause by blatantly violating his employer’s policies.
 
 Id.,
 
 p. 5, 951 So.2d at 1200.
 

 As the Third Circuit held in
 
 Grillette v. Alliance Compressors,
 
 2005-0982, p. 5 (La.App. 3 Cir. 2/1/06), 923 So.2d 774, 778, “an employer cannot avoid paying benefits by creating a job that accommodates any work restrictions and then firing the injured employee without cause and that an injured employee cannot refuse to accept suitable employment or blatantly violate company policy without the possibility of recourse by the employer.” Citing
 
 Palmer v. Alliance Compressors,
 
 2005-0478 (La.App. 3 Cir. 11/2/05), 917 So.2d 510.
 

 After our thorough review of the record in the present case, we cannot conclude that the WCJ erred in finding that Mr. Bell was not entitled to indemnity benefits from February 1, 2002, until June 21, 2009. It is undisputed that upon his return to work two weeks after the accident, Mid City Printers accommodated Mr. Bell by allowing him to work within the lifting restriction imposed by Dr. Thompson and allowing him to attend doctors’ appointments during the work day. The record also confirms that at the time of his termination for cause, unrelated to his injury, Mr. Bell was earning one hundred percent of his pre-injury wage. Under the circumstances presented here, Mr. Bell did not carry his burden of proof that his injury resulted in his inability to earn ninety percent or more of the wages he earned at the time of his injury. This assignment of error is without merit.
 

 Assignment of Error No. 4: The WCJ erred in failing to award Mr. Bell penalties and attornegs’ fees for Mid Citg Printers’ arbitrary and capricious handling of his claim.
 

 | ifiThe decision to impose penalties and attorneys’ fees is essentially a factual issue subject to the manifest error-elearly wrong standard of review.
 
 Authement v. Shappert Engineering,
 
 2002-1631, p. 12 (La.2/25/03), 840 So.2d 1181, 1188-89. Awards of penalties and attorneys’ fees in compensation cases are essentially penal, and are intended to deter indifference and undesirable conduct by employers and their insurers toward injured workers.
 
 Trahan v. Coca Cola Bottling Co.,
 
 2004-0100, p. 17 (La.3/2/05), 894 So.2d 1096, 1108. Although the benefits in workers’ compensation cases are to be liberally construed, penal statutes are to be strictly construed.
 
 Smith v. Quarles Drilling Co.,
 
 2004-0179, p. 7 (La.10/29/04), 885 So.2d 562, 566. Penalties should not be imposed in doubtful cases, where a
 
 bona fide
 
 dispute exists as to the claimant’s entitlement to benefits.
 
 J.E. Merit Constructors Inc. v. Hickman,
 
 2000-0943, p. 5 (La.1/17/01), 776 So.2d 435, 438.
 

 Mr. Bell asserts that Mid City Printers should have been assessed penalties and attorneys’ fees for failing to institute indemnity benefits after he was fired and for failing to authorize medical benefits in connection with his injuries. In instances where the employer fails to commence payment of benefits, penalties and attorneys’ fees are authorized under La. R.S. 23:1201(F)(2), unless the claim is reasonably controverted, or resulted from conduct over which the employer or insurer had no control.
 
 See McCarroll v. Air
 
 
 *1237
 

 port Shuttle Inc.,
 
 2000-1123 (La.11/28/00), 773 So.2d 694.
 

 In
 
 Brown v. Tex-LA Cartage Inc.,
 
 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890, the Louisiana Supreme Court explained:
 

 In general, one can surmise from the plain meaning of the words making up the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably |, (¡controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
 

 Mr. Bell first argues that the WCJ erred by not awarding him penalties and attorneys’ fees for Mid City Printers’ denial or delay in approving the MRI requested by Dr. Applebaum. Mid City Printers counters, arguing that this issue was not raised at trial and, therefore, cannot be raised on appeal. We agree. It is evident from the record that approval for the MRI requested by Dr. Applebaum was not addressed at trial. Moreover, Mr. Bell testified that he chose not to have the MRI that was recommended by Dr. Applebaum.
 

 Mr. Bell next argues that Mid City Printers should have been accessed penalties and attorneys’ fees for its failure to institute indemnity benefits upon Mr. Bell’s termination from employment and for its failure to approve his back surgery. In both instances, the WCJ determined that Mr. Bell failed to carry his burden to show that he was entitled to such benefits.
 

 Considering the opinion of the court-appointed IME, that Mr. Bell’s surgery was not “medically necessary”, we are constrained to find that Mid City Printers reasonably controverted Mr. Bell’s claim. Moreover, as established by the jurisprudence, the finding of the WJC in favor of the employer, as in the present case, is “virtually conclusive that its actions were reasonable and were not arbitrary and capricious”
 
 Royals v. Town of Richwood,
 
 42,585, p. 12 (La.App. 2 Cir. 10/24/07), 968 So.2d 833, 840, citing
 
 J.E. Merit Constructors, supra.
 
 Accordingly, we find no merit in Mr. Bell’s final assignment of error.
 

 | |7Finally, Mid City Printers answered this appeal, asserting that the WCJ erred in denying its claim for forfeiture of benefits pursuant to La. R.S. 23:1208. Mid City Printers alleges that Mr. Bell willfully made misrepresentations to Dr. Denney concerning his level of pain and his intake of Soma so that Dr. Denney would continue writing prescriptions for Soma.
 

 La. R.S. 23:1208 makes it unlawful for any claimant to willfully make false statements for the purpose of obtaining workers’ compensation benefits. The only requirements for disqualification under Section 1208 are: 1) a false statement or representation, 2) which is willfully made, and 3) which is made for the purpose of obtaining workers’ compensation benefits.
 
 Resweber v. Haroil Const. Co.,
 
 94-2708, p. 94-3138, p. 11 (La.9/5/95), 660 So.2d 7, 14.
 

 The issue of whether an employee has forfeited his right to workers’ compensation benefits is a factual question that should not be disturbed on appeal absent manifest error.
 
 Stanich v. Canal Entertainment,
 
 2009-0707, pp. 2-3 (La.
 
 *1238
 
 App. 4 Cir. 11/12/09), 26 So.3d 269, 272. Statutory forfeiture is a harsh remedy and must be strictly construed.
 
 Herrera v. Cajun Co.,
 
 2006-1627, p. 7 (La.App. 4 Cir. 6/6/07), 960 So.2d 1161, 1166. Inadvertent or inconsequential statements will not give rise to a finding of willful misstatement, triggering statutory penalties.
 
 Hernandez v. ESKCO, Inc.,
 
 2000-0174, p. 3 (La.App. 4 Cir. 11/15/00), 773 So.2d 865, 867.
 

 In the present case, the WCJ determined that, while “Mr. Bell’s credibility was weak”, Mid City Printers failed to meet its burden to show that Mr. Bell willfully made false statements for the purpose of obtaining workers’ compensation benefits. We agree.
 

 |1RIt is undisputed that Mr. Bell’s statements to Dr. Denney (that he had timely taken his prescribed medications) conflicted with the negative results of the drug screenings. However, while Mid City Printers provided speculation as to why Mr. Bell made erroneous statements, nothing was presented to show that Mr. Bell made any intentional or willful misrepresentation for the purpose of obtaining compensation benefits. Therefore, we find no manifest error in the WCJ’s conclusion that Mid City Printers failed to carry its burden on this issue.
 

 CONCLUSION:
 

 For the foregoing reasons, we affirm the judgment of the WCJ.
 

 AFFIRMED.
 

 [1]
 

 . La. C.C.P. art. 1450(A)(5) provides in pertinent part that "any party may use the deposition of an expert witness for any purpose upon notice to all counsel of record, any one of whom shall have the right within ten days to object to the deposition, thereby requiring the live testimony of an expert.”